BENJAMIN WALLS, Administrator of the Estate of MANUEL VERA, Deceased; *v.* WILLIAM PRESTON.

STATEMENT OF GROUNDS FOR NEW TRIAL.—If the grounds upon which a party relies for a new trial are not designated, either in the notice or statement, a new trial should be denied.

SAME—WAIVER OF.—Where the attorneys of both parties appear in open Court, and by consent argue a motion for a new trial, this consent, even if it is a waiver of a notice of intention to move for a new trial, is not a waiver of a statement in some proper form of the grounds of the motion.

ASSIGNMENT OF ERRORS.—A statement on appeal is of no avail, unless the grounds upon which a party intends to rely are therein set forth.

ERRORS—HOW REVIEWED.—Error in law, occurring at a trial, may be reviewed upon a bill of exceptions, as well as upon a motion for a new trial.

LEASE—RENT PAYABLE IN PART OF CROP.—An agreement in writing between two parties, by which the party of the first part demises and leases unto the party of the second part land (describing the same) for a term specified, and the party of the second part agrees to cultivate and plant the land at his own expense, and deliver on the premises, to the party of the first part, one sixth of all the crops as soon as harvested, and not to underlet the premises or yield the possession to any person other than the lessor, without the lessor's consent in writing, is a lease,

and not a contract for the services of the party of the second part, for which he is
to receive as compensation a portion of the crops he may produce.

APPEAL from the County Court of Solano County.

The lease mentioned in the opinion of the Court was executed by both Manuel Vera and Preston, the defendant. December 1st, 1861, Vera died, and Walls was appointed administrator of the estate on the 23d day of May, 1863.

On the 23d day of October, 1863, Walls, as administrator, commenced an action before a Justice of the Peace, in Solano County, against Preston, to recover possession of the lands, under the thirteenth section of the Forcible Entry and Detainer Act, as amended in 1862. Plaintiff claimed that Preston was holding over after the termination of his lease.

The case was appealed to the County Court. On the trial in the County Court, plaintiff offered in evidence the lease; defendant objected to its reception, because it was irrelevant, and was not a lease, but a contract to cultivate land for a specific portion of the crop raised. The Court sustained the objection, and plaintiff excepted. A bill of exceptions was drawn up and signed by the Judge, and is copied into the transcript.

Defendant recovered judgment in the Court below, and plaintiff appealed.

The other facts are stated in the opinion of the Court.

*S. G. Hilborn*, for Appellant.

The Court erred in refusing to admit the lease in evidence, in proof of the allegation of the complaint. (Act of Forcible Entry and Detainer, section 13; Wood's Digest, 469; *Demarest* v. *Willard*, 8 Cowen, 206; *Evortson* v. *Sawyer*, 2 Wend. 507.)

The point of objections to the lease is not sustained by the authorities cited. Defendant is estopped to deny the lease. Be the contract what it may, it confers upon him the absolute right to the land during the term.

*M. A. Wheaton,* for Respondent.

The paper marked "Exhibit B" was inadmissible, it not being a lease as called for by the complaint. (*Bernal* v. *Hovious,* 17 Cal. 541; *Putnam* v. *Wise,* 1 Hill, 235; *Dinchart* v. *Wilson,* 15 Barb. 595; *Caswell* v. *Districh,* 15 Wend. 379.)

Even if the complaint had been differently framed, Preston's occupation would be no more than that of a mere servant, and this action would not lie. (*Bernal* v. *Hovious,* 17 Cal. 541.)

By the Court, RHODES, J.

The motion for a new trial was properly overruled. The plaintiff failed to designate the grounds upon which he relied, either in his notice or statement. It is stated in the bill of exceptions that the plaintiff in open Court moved for a new trial, and that the motion was entertained by consent. Even if the consent of the parties could be deemed a waiver of a notice of intention to move for a new trial, it did not waive the statement, in some proper form, of the grounds of the motion. (See Stats. 1863, p. 643.) There is nothing upon which the Court below can act on the hearing of the motion, unless the grounds of the motion are designated.

The statement on motion for a new trial is of no avail as a statement on appeal, for the reason that the grounds upon which the plaintiff intends to rely are not therein set forth. This leaves for examination the errors appearing upon the judgment roll, and the only ones assigned are those set forth in the bills of exceptions.

The point mainly relied upon by the appellant is the error of the Court in excluding as evidence the instrument offered as a lease of the lands in controversy, executed by the plaintiff's intestate and the defendant. The alleged error can be reviewed upon a bill of exceptions as well as upon a motion for a new trial. (*Rice* v. *Gashire,* 13 Cal. 53; *Brown* v. *Tolles,* 7 Cal. 399.) In many cases it is preferable, and we think it the better practice, that the party complaining of the exclu-

sion of legal and competent testimony, or of the admission of that which is illegal or incompetent, should take his exception by bill or otherwise, and assign the error on appeal from the judgment, instead of incurring the labor and expense of attempting to procure a new trial, and of making up for this Court a record, the large portion of which would serve, perhaps, in no manner to explain the errors assigned.

The plaintiff contends that the instrument offered in evidence by him is a lease, and the defendant insists that it is a cropping contract, which constituted the parties tenants in common of the *land* and of the *crops* during the time mentioned in the instrument.

The plaintiff's intestate, Manuel Vera, "demised, leased, and, to farm, let" the premises unto Preston, "to have and to hold" the same from the first day of December, 1861, to the first day of October, 1863; and Preston covenanted not to "underlet the said premises, or yield the possession thereof to any" but Manuel Vera, without his consent in writing, and to properly cultivate and plant the land at his own cost and expense, and to deliver thereon to Manuel Vera, on the premises, one sixth of all the crops as soon as harvested. Is this instrument a lease, or is it only a contract for the services of Preston, to be performed on the land, and for which he is to receive as compensation a portion of the crops he may produce?

It is competent for the parties covenanting for the use, occupation and cultivation of land, and the payment therefor out of the crops produced, to execute a lease in the usual form, or they may enter into an agreement constituting them tenants in common of the crops, and at the same time may provide that the owner or the occupant may hold the possession of the land, or that both may be tenants in common of the land during the time mentioned in the agreement. It is the general rule that, where a term is created, the possession given to the occupant, and the produce agreed to be paid is to be paid *as rent;* then the instrument is regarded as a lease. (Taylor, Land. and Ten. sec. 24.) It is also a general rule that

Walls *v.* Preston.

where the occupant covenants to deliver to the owner a portion of the crops, the agreement is held to be a cropping contract—a letting upon shares—and the owner and occupant are tenants in common of the crop. (*Putnam* v. *Wise*, 1 Hill, 247 ; *Bernal* v. *Hovious*, 17 Cal. 544.)

In the last two cases, and the authorities therein cited, there was no question as to which of them (the owner or the occupant) was entitled to the possession of the land under the agreement.

The character of the instrument must be determined upon a consideration of all its terms and provisions, and the Court will give it such a construction as will carry into effect the intention of the parties, without regard to the technical terms employed. Although words are used which, if disconnected from other parts of the instrument, would import a lease, they will not be so construed if the evident intention was merely to make a cropping contract. Nor, on the other hand, will the instrument be so construed as to deprive the occupant of the position of a tenant of the land, if from the whole instrument it is apparent that the parties intended he should enjoy the exclusive possession of the premises.

In *Putnam* v. *Wise*, Mr. Justice Cowen says : " The true test seems to lie in the question whether there be any provision, in whatever form, for dividing the specific products of the premises. If there be, a tenancy in common arises, at least in such products as are to be divided ;" and that case is cited on that point, with approbation, in *Bernal* v. *Hovious*, 17 Cal. 544.

The doctrine was deduced by the learned Judge from what he understood to be the test adopted by Mr. Chief Justice Nelson, in *Caswell* v. *Districh*, 15 Wend. 379, and that principle has been acted upon and affirmed, almost without question, in a number of cases in New York. (*Dinehart* v. *Wilson*, 15 Barb. 595 ; and *Harrower* v. *Heath*, 19 Barb. 337.) In all the cases in New York, affirming on this point *Putnam* v. *Wise*, and in *Bernal* v. *Hovious*, the question was merely who was entitled to the possession of the crop, not whether the owner or the occupant was in possession of the land, not whether the

relation of landlord and tenant existed between the parties, though that question was incidentally discussed.

The two principles deducible from those cases are these: First—If the agreement contains terms which by themselves would import a lease, and other terms which provide for a division of the crops, and it is doubtful which it is—a lease or a cropping contract—it will be deemed a cropping contract, by reason of a division of the crops; and second, where the agreement provides for a division of the crops between the owner and occupant, they are held to be tenants in common of the crop. It cannot be maintained, upon those authorities, and certainly not upon principle, that a lease, in the usual form of a demise, for a term of years, with covenants sufficient to give the lessee the exclusive possession of the land during the time, and to require him to yield up the possession at the end of that term, shall not be a lease, and the occupant shall not be a tenant, but shall be a mere servant of the owner, because the parties have made provision for a division of some portion or all of the crops that may be produced. The term *division*, as applied to the crops, has no more forcible signification in aid of the interpretation of the instrument, than has the word *demise*, when employed in connection with the land.

Mr. Justice Cowen, in *Putnam* v. *Wise*, cites with approbation, Woodfall, (Land. and Ten.,) who says that the most proper and authentic form of words may be overcome by a contrary intent appearing in the deed of demise. No reason can be assigned, why the same rule of construction should not be applicable to the words providing for a division of the crop.

In *Stewart* v. *Doughty*, 9 John. 108, the Court held that the instrument that by its terms would have amounted to a cropping contract, was a lease, because the premises were let for a term certain; and in *Putnam* v. *Wise*, it was said that the last case was "very much shaken, if not entirely overturned," by *Caswell* v. *Districh*, for in the last case the demise was for a year, certain.

In *Harrower* v. *Heath*, 19 Barb. 337, the Court held, upon the authority of the cases according with *Putnam* v. *Wise*,

that the parties were tenants in common both of the *land* and the *crops;* but in that case the parties agreed that the owner should have the use of certain portions of the premises for certain purposes, and the whole instrument showed that the parties contemplated a *joint occupation;* and it may be remarked that the right to the possession of the land, as between the owner and occupant, was not in any manner in issue.

The object of Courts in adopting rules of construction, is only to furnish means to so interpret the agreement as to ascertain the intention of the parties. The object is not to make a contract for the parties, nor to vary the terms of the covenants they have entered into; nor is it to arbitrarily insert a covenant they have not agreed to.

Where it plainly appears that the parties have made a lease, the Court will not declare it *not* to be a lease simply because the parties have inserted a covenant that more appropriately belongs to a contract of a different character. In the cases we have cited, the Courts were endeavoring to ascertain the intention of the parties; and having ascertained it, they declared the rights of the parties under the contract, as they made it, so far as the same were in issue.

There is certainly no rule of law, so absolute in its nature, as to prevent the occupant of land, under a contract which constitutes him a tenant in common with the owner in the crops, from having as entire a control over the premises during the term, if the parties so agree, as a tenant covenanting to pay a money rent would have. In other words, from being a tenant of the land under a lease, and at the same time a tenant in common of the crop, or of some part of it. Such agreements are constantly made, and it never occurs to the parties, and they do not intend, that the tenant is changed into a servant of the lessor, because the lessor receives a portion or all of his compensation, for the use of the land, in some uncertain quantity of the products of the land.

In *Chandler* v. *Thurston*, 10 Pick. 205, where the contract was very similar to that in *Putnam* v. *Wise*, the Court said

the contract "may be regarded either as a contract to perform labor on the land of the plaintiff remaining in his own possession, and to receive his pay in produce, or as a hiring of the land for a term of time, rendering a rent payable in produce," and in considering the case the Court treated the occupant as a tenant of the land; and the same was the case in *Lewis* v. *Lyman*, 22 Pick. 437, and in many other cases. We can see nothing incompatible in the tenant of the land under a lease, being at the same time a tenant in common of the crops; and there never would have been any doubt upon this point, had not the Judges in New York, in passing upon questions concerning the rights of the parties to the possession of the *crops*, uttered dicta which seemed to determine the point against the occupant.

"A lease," as defined by Bouvier, "is a contract for the possession and profits of land on one side, and a recompense of rent, or other income, on the other;" or "it is a conveyance of lands and tenements to a person for life, for years, or at will, in consideration of a return of rent or other recompense." In *Hunt* v. *Comstock*, 15 Wend. 667, where Comstock purchased a tract of land from Hunt, and gave him a mortgage, and "let" to him the house and garden with certain privileges, the Court adjudged it to be a lease, though there was no reservation of rent. If a reservation of rent, or some benefit or recompense equivalent to rent, is deemed necessary, in order to constitute a contract a lease, the covenant to pay or deliver a portion of the crop, amounts in every sense to a recompense for the use and occupation of the land, as fully as would a covenant to pay money, or a certain amount of the crops, or to improve the premises, or keep them in repair, or to pay the taxes, or perform labor for the lessor, all of which have been held good, as a reservation of rent. It is apparent from the opinion of the Court in *Caswell* v. *Districh*—the case upon which the extreme doctrine in New York was founded—that the Court did not intend to destroy what was plainly a lease, and convert it into a mere contract for work and labor, because it provided for a division of the crops; for Mr. Justice

Nelson, in delivering the opinion of the Court, says: "This view of the contract should be maintained, unless otherwise clearly expressed;" and in commenting upon *Stewart* v. *Doughty*, he regarded the agreement of the lessee, to pay a share of the specific crops, as an agreement to pay rent in kind.

It clearly appears to us that the parties in this case intended to make a lease, and that the instrument executed by them was a lease; that its effect as such was not destroyed by their having contracted for the payment to the lessor of a portion of the specific crops to be produced, and that that covenant was an agreement to pay the rent of the premises out of the crops.

The judgment is reversed and the cause remanded for a new trial.