[Civ. No. 4124. Second Appellate District, Division Two.—May 28, 1923.]

## LOULU FRASIER, Respondent, v. MAYE WITT, Appellant.

[1] LEASE—SUBLETTING OF APARTMENT HOUSE—CONSTRUCTION OF CONTRACT.—A written contract between the lessee of an apartment house and two others, under which the latter are let into exclusive possession of the apartment house for a fixed term and are to receive and retain the rentals in excess of a certain stipulated sum per month, which sum they are obliged to pay the lessee on a specified day of each month of the term, it being further provided that if they should make "default" in any of their covenants the lessee, at her option, may "re-enter and take possession of said premises in entirety, and remove said second parties therefrom," constitutes an underletting of the premises, notwithstanding the parties thereto style such contract a "Contract for Services."

[2] ID.—AUTHORITY TO INSTALL MANAGER—RIGHT TO SUBLET.—Where a lease of an apartment house contains a provision against subletting or transferring the use or possession of the premises, the granting of permission to install a "manager" does not authorize the lessee to sublet to a tenant the entire premises and transfer the right of exclusive possession.

[3] ID. — UNLAWFUL DETAINER — DAMAGES — REPAIRS — SETOFF. — In an action of unlawful detainer to recover possession of a lot of land, with an apartment house thereon, together with damages for unlawful detention, because of the violation by the lessee of a

---

1. What constitutes sublease, notes, 117 **Am. St. Rep.** 91; 7 **Ann. Cas.** 539.

covenant against subletting, the defendant is not entitled to set off the cost of the improvements made by her.

[4] ID.—ADDITIONAL RENTAL PAID—RECOUPMENT.—In an action of unlawful detainer to recover possession of a lot of land, with an apartment house thereon, together with damages for unlawful detention, because of the violation by the lessee of a covenant against subletting, the aggregate of certain monthly payments made by defendants to plaintiff in addition to monthly rental called for by the lease is not available as an offset or recoupment, where such payments were additional rental for the premises covering a period antedating the violation by defendants of the covenant against subletting.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Floyd S. Sisk for Appellant.

Wm. T. Blakely for Respondent.

FINLAYSON, P. J.—This is an action of unlawful detainer to recover possession of a lot of land, with the apartment house thereon known as the Seaward Apartments, situated in the city of Venice, together with damages for unlawful withholding. The case was tried before a jury, a verdict was returned awarding possession to plaintiff and assessing her damages at $345, and from the judgment entered thereon the defendant Maye Witt appeals.

Appellant, as plaintiff's lessee, entered into possession of the premises under a written lease executed by herself and plaintiff on November 1, 1919, whereby the latter, as the lessor, leased the premises to appellant for the term of five years at a rental of $100 per month, payable monthly in advance on the first day of each and every month of the five-year term. The lease contained the following covenant on the part of appellant: "That she will not sublet, or transfer the use or possession of, said house, No. 15 Mildred Ave., Venice, California, furniture, goods and chattels, or any part of the same to any person or persons whatever; that she will carefully and economically occupy and use said house, furniture, goods and chattels, and forthwith repair all injury, and pay all damages . . . that may happen or

accrue to the same or any part thereof during the term of this lease.'' On December 10, 1921, appellant, as the party of the first part, and the defendants H. K. Weadon and wife, as parties of the second part, executed a written instrument bearing the caption ''Contract for Services'' and which contains the following provisions: ''That the first party hereby engages and employs the second parties, and said second parties hereby accept said engagement and employment, upon the following terms and conditions, to-wit: That the said second parties hereby agree to manage and conduct that certain apartment house known as the Seaward Apartments, situate at No. 15 Mildred avenue, in the city of Venice, California, for the term of one year from and after the 10th day of December, 1921, and ending on the 9th day of December, 1922. That during the said term said second parties will carefully and economically manage and conduct said apartment house, and carefully and economically use and occupy said house, furniture, goods and chattels now therein situated, and shall at their own expense forthwith repair all injury, and pay all damages that may happen or accrue to the same or any part thereof during the term of this agreement. . . . At the termination of this agreement, or other sooner determination thereof, said second parties will peaceably and quietly surrender, yield and deliver up the entire possession of said house, furniture, goods and chattels, and premises above described, unto said first party, in as good condition as the same are now in, reasonable use and wear thereof excepted. . . . The second parties, for their services to be rendered and performed hereunder, are to and shall receive and retain any and all sums of moneys derived as rentals in and about said premises, in excess of the sum of two hundred seventy-five ($275.00) dollars per month; said second parties hereby agreeing to pay to said first party the said sum of $275.00 per month, in lawful money of the United States of America, upon the 10th day of January, 1922, and thereafter upon the 10th day of each and every month during the remainder of this term, a similar amount as above specified; said parties of the second part hereby and upon this date paying to the first party the sum of $700.00, to apply as follows: For the first month of said term, and for the last month thereof, and $150.00 to apply upon the October-

November, 1922, payment; and if all of the terms of this agreement are carried out upon the part of said second parties, then they shall not be called upon by first party to account for any sums of money for the months above mentioned; but if said second parties make default in any of the covenants herein contained, and first party again takes possession or is entitled to take possession of said premises, she shall also be entitled to retain all of said above-named sum of $700.00 as liquidated damages for the use and occupation of said premises by the second parties under this contract. . . . And it is agreed that time is of the essence of this contract, and that if the second parties do not make the payments hereinbefore provided for, at the time and in the manner therein specified, or default in any of the covenants above agreed upon, then and in that event this contract may, at the option of the first party, thereupon and without notice to second parties, be terminated and thereafter become null and void; and that thereafter the first party or her agents may re-enter and take possession of said premises in entirety, and remove said second parties therefrom, or any and all other persons unlawfully holding the same, or any part thereof, using all force that may be reasonably necessary, said second parties hereby waiving any and all damages that may accrue from such removal.''

Upon discovering that her lessee, the appellant here, had entered into this agreement with the Weadons, plaintiff, deeming that the former had thereby violated her covenant not to sublet or transfer the use or possession of the premises, brought this action on January 21, 1922, alleging that without plaintiff's consent appellant had sublet the leased property to the Weadons and had transferred to them the use and possession thereof. Before bringing the action plaintiff served upon each defendant the statutory three days' notice to quit and deliver up possession. At that time appellant was in possession of the property, she having previously effected a re-entry.

Appellant's answer, besides containing a denial that she had sublet the premises or had transferred the use or possession thereof, pleaded as affirmative defenses: (1) That plaintiff had waived the covenant against subletting and transferring the use and possession by previously giving to appellant permission to place a ''manager'' in charge of

the apartment house; (2) that on January 1, 1920, at plaintiff's request, appellant had orally agreed to pay an additional sum of $20 per month on her lease—that is, a monthly rental of $120 instead of the $100 per month provided for in the written lease; that pursuant to such oral agreement she paid to plaintiff such additional sum of $20 for twenty-one months, making a total of $420; that said total of $420 was "additional rental at the rate of $20 per month upon said premises for twenty-one months from January 1, 1920, to and including September 1, 1921," and that in consideration of such increased rental plaintiff had agreed that defendant might install a "manager"; and (3) that since taking possession appellant had expended for repairs and new furnishings more than $3,000.

Appellant has not stated her points with any definiteness or crystalline lucidity. Her principal points, as nearly as we can discern them, are: (1) Her contract with the Weadons was not a sublease or a transfer of the use or possession of the premises; (2) by previously permitting appellant to install a manager, a Mrs. O'Brien, who was in charge of the apartment house for appellant from February, 1921, to June of that year at a salary of $35 per month, respondent waived appellant's covenant not to sublet or transfer the use or possession; (3) the expenditures made by appellant for repairs should have been allowed as an offset to respondent's claim of damages for the unlawful withholding; (4) the twenty-one payments of $20 each likewise should have been allowed as an offset; and (5) the trial judge erred in his refusal to give certain instructions and in his rulings upon certain objections to the admission of evidence.

[1] The instrument executed by appellant and the Weadons, though it is styled a "Contract for Services," is but a thinly veiled attempt to conceal appellant's deliberate evasion of her covenant not to sublet the premises or transfer the use or possession thereof. Looking beyond the form of the transaction to discover its true import we can readily see that the arrangement made with the Weadons amounted to an underletting of the premises, notwithstanding the parties designated their agreement a contract for services. Under the provisions of the instrument the Weadons were not to go into occupation simply as servants of appellant.

They were new tenants, and not merely new occupants. A part of the lessee's estate was transferred to them. That is, they were given the right of exclusive possession for a definite term, one year, for which a fixed rent was reserved. The document provides that the Weadons are to manage and conduct the apartment house "for the term of one year," and that during that "term" they shall pay appellant "the sum of $275 per month . . . upon the 10th day of January, 1922, and thereafter upon the 10th day of each and every month during the remainder of this term." This part of the document is so worded that the Weadons, in effect, obligated themselves to pay appellant this fixed sum of $275 per month irrespective of whether they received that amount from the rentals of the several apartments or not. It is further provided that if the Weadons shall "default" in any of their covenants then appellant, at her option, may "re-enter and take possession of said premises in entirety, and remove said second parties therefrom." It is clear that it was within the contemplation of the parties that the Weadons should have the right to receive and retain the whole income to be derived from the apartments. True, the instrument declares that the Weadons shall have the right to retain only the income in excess of $275 per month; but as that sum was to be paid by them to appellant in any event, the effect is the same as if the document had expressly declared that the Weadons should retain all the income from the apartments, rendering to appellant a rental of $275 per month during the term. Such a provision is wholly inconsistent with the idea that the Weadons were but servants of appellant. Moreover, if the relation were not that of landlord and tenant but that of master and servant, as appellant would have us believe, then why did appellant expressly reserve to herself the right of "re-entry" for condition broken? Such a reservation would not have been necessary had the possession of the Weadons been that of servants and not that of tenants. Clearly, the transaction possessed all the elements necessary to constitute it an underletting of the leased premises, let the parties to it call it what they may.

[2] Respondent's previously granted permission to install a "manager," i. e., a mere agent or servant, did not authorize appellant to sublet to a tenant the entire premises

and transfer the right of exclusive possession. Therefore any permission which respondent may have given to employ a servant to manage the apartment house was not a waiver of appellant's covenant not to sublet or to transfer to a tenant the use or possession of the premises as an entirety, as was done when appellant put the Weadons in possession under the so-called "Contract for Services."

[3] Appellant was not entitled to set off the cost of the improvements made by her. We do not understand her to claim that respondent violated any covenant to make repairs. And even if the latter had violated such a covenant, still it would have been the violation of a covenant wholly independent of appellant's covenant not to sublet or transfer possession, and therefore would not be a defense to this action (*McSloy* v. *Ryan*, 27 Mich. 110) ; nor would it be a proper subject for setoff or counterclaim. (*Arnold* v. *Krigbaum*, 169 Cal. 143 [Ann. Cas. 1916D, 370, 146 Pac. 423] ; *Phillips* v. *Port Townsend Lodge*, 8 Wash. 529 [36 Pac. 476].) Appellant seems to think that section 741 of the Code of Civil Procedure gives her the right to set off the cost of the improvements. That section has no application here. Aside from the consideration that setoff or counterclaim is usually not permissible in an action for unlawful detainer, section 741 is applicable only when the improvements are made by a defendant who, at the time when they were made, was holding *adversely* to the plaintiff. (*Hannan* v. *McNickle*, 82 Cal. 122 [23 Pac. 27].) Hence the defendant, when she made the improvements, was holding not adversely to but under plaintiff, as the latter's tenant.

[4] The $420, the aggregate of the twenty-one additional payments of $20 each, is not available as on offset or recoupment. Assuming, for the purposes of this decision only, that these additional amounts could have been successfully pleaded as a recoupment or an offset if, as appellant testified, they were paid as advances on rent to accrue in the future at a time subsequent to the forfeiture of appellant's lease, still the fact remains that such a defense was not pleaded. Appellant's answer alleges that the $420 was an additional rental . . . upon said premises for twenty-one months from January 1, 1920, to and including September 1, 1921." This period antedated the transaction whereby appellant sublet the premises to the Weadons contrary to

her covenant. That underletting did not occur until December 10, 1921. There can be no question as to respondent's right to receive and retain all rents which accrued prior to the forfeiture of the lease. Such prior rents could not possibly be set off against the damage which was caused by appellant's unlawful detainer after she was served with notice to quit.

What we thus far have said will suffice to dispose of most of the other points raised by appellant. The few remaining assignments are not pointed out with sufficient definiteness to call our attention to the particular action of the court which is deemed to be erroneous. We cannot be expected to hunt through the record to find errors which appellant's general discourse might lead us to suspect may exist. She should at least specifically point out the errors upon which she relies.

The judgment is affirmed.

Works, J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 26, 1923.