[Civ. No. 283. Fourth Appellate District.—March 6, 1931.]

A. B. SHERWIN, Respondent, v. S. K. BOGOSIAN et al., Appellants.

G. W. Zartman and Bradley & Bradley for Appellants.

Ward G. Rush for Respondent.

JENNINGS, J.—This is an action in unlawful detainer to recover possession of certain real property leased by plaintiffs to defendants for a term of years. The written instrument of lease contained covenants by the lessees that they would not commit any waste on the premises and that they would not, without the written consent of the lessor, sublet the leased premises or any part thereof. At the conclusion of the trial the court ordered that the lease be forfeited and canceled and that the plaintiff, respondent herein, be restored to possession of the premises. From this judgment defendants have appealed.

Appellants object to certain findings of the trial court wherein the court found that appellants had violated certain covenants contained in the lease agreement, particularly the covenant not to sublet the leased premises without the written consent of respondent.

During the trial of the action a certain instrument executed by appellant S. K. Bogosian and F. B. Cotton on December 27, 1928, was admitted in evidence. ▉ It is the contention of appellants that this instrument amounted to no more than what is generally denominated a cropping contract, under the provisions of which F. B. Cotton agreed to farm the premises for a share of the crop to be grown thereon. Respondent, on the other hand, contends that the instrument is an agreement for the leasing of the premises and that its execution was in violation of the covenant on the part of appellants not to sublet the premises, which warranted the forfeiture and termination of the lease agreement between respondent and appellants. There is, then, here involved the construction of this instrument. The instrument is in the following form:

"This Lease made the 27th day of December, 1928, between S. K. Bogosian of Tulare, Cal., party of the first part and F. B. Cotton, of said place, party of the second part,

"Witnesseth: that the said party of the first part hereby leases to the party of the second part for the term of one year, the real property situate in the County of Tulare, State of California, and described as follows, to-wit:

"The N.W.¼ of S.W.¼ of Section 27, Township 20 South, Range 24 E. M. D. B. & M., to be farmed to cotton during the season of 1929 on share rental of one-half of all

cotton and cotton seed produced, delivered at Gin agreed upon.

"The party of the first part is to furnish horses, feed for same, tools now on the land, and pay all power bills for power used in irrigating said land.

"The party of the second part agrees to properly prepare the land for planting to cotton and properly care for the crop while growing and when ready for harvest, to harvest the same and deliver the whole of said crop at Gin, all at his own expense; to properly care for the pumping plant on said premises, and all tools and improvements on said land, and keep the farming implements in good order and repair at his own costs.

"The party of the second part also agrees to advance one-half the cost for electric power for said land, the same to be repaid to him by the party of the first part when the crop is harvested.

"Upon the failure of the party of the second part to do and perform all the things and matters herein agreed to be done and performed, in good and proper season, it shall be optional with the party of the first part to do such things and charge the expense therefor to the party of the second part.

"The party of the second part further agrees to deposit with G. W. Zartman, the sum of three hundred dollars as security for the carrying out of this agreement on the part of the party of the second part.

"The party of the second part agrees to furnish the cotton seed to be sown on said land, but he shall be repaid in seed from the cotton seed harvested from said land, and the balance of the seed at the Gin shall belong one-half to each of said parties.

"Witness the hands of said parties the day and year first above written.

"S. K. Bogosian.
"F. B. Cotton."

In support of the contention that this agreement entered into between appellant S. K. Bogosian and F. B. Cotton was a mere cropping contract, whose execution did not violate the covenant not to sublet, appellants have cited a number of decisions of the Supreme Court of California. The earliest

of these cases is the case of *Bernal* v. *Hovious,* 17 Cal. 541 [79 Am. Dec. 147], where it was held that an oral agreement, by whose terms one party was to have the land for three years to farm it and give the owner for its use one-third of the grain raised after it was sacked, the owner to furnish the farming implements, wagon, horses and his share of sacks for the grain, was not a lease although the parties termed it a lease, but that it was a contract for the working of the farm upon shares and that the parties were tenants in common of the undivided grain. In *Walls* v. *Preston,* 25 Cal. 59, the Supreme Court held that an agreement, wherein the party who is given possession of the premises for twenty-two months under an agreement to cultivate the land at his own cost and to deliver to the other party to the contract on the premises one-sixth of all crops harvested, was a lease. In its decision, the court points out that the question before the court in *Bernal* v. *Hovious, supra,* was merely who was entitled to the possession of the crop, not whether the owner or occupant was in possession of the land, and not whether the relation of landlord and tenant existed between the parties although, as the court pointed out, that question was incidentally discussed. It is, however, strenuously contended by appellants that the Supreme Court of California has unequivocally announced the rule for the construction of agreements of the sort we have before us for consideration in the recent case of *In re Okahara,* 191 Cal. 353 [216 Pac. 614]. This decision, therefore, merits our careful analysis. The question before the court in the Okahara case was the construction of a certain instrument executed by the petitioner Okahara, designated as the contractor, and an individual who was termed the employer. Under the provisions of the agreement the contractor, who was stated to be an independent contractor, agreed to clear all of the land and make it ready for plowing and planting within a period of two years from the date of the execution of the agreement, one-half of the land to be cleared during the first year of the agreement and the remaining half during the second year, for the performance of which work the contractor was to receive the compensation of $50 per acre. The contractor was to plant the whole of the land to orchard within two years from the date of the agreement, all trees to be furnished by the employer. The contractor also agreed to

plant certain designated intercrops. The contractor further agreed to gather and pack all fruits, berries and vegetables at seasonable times and to make delivery thereof at any fruit house designated by the employer. The contractor also agreed to furnish all labor and all machinery and equipment necessary for the performance of the contract. Tools and implements which were upon the premises were to be used by the contractor and returned at the expiration of the term of the agreement in good condition. The products from the land were to be sold by the employer upon such terms as he should deem best and the contractor was to receive, as further compensation in addition to the allowance of $50 per acre for clearing the land, one-half of the net proceeds derived from the sale of the products, which share was to be paid to him in cash by the employer. It was further provided that the contractor should have access to the land at all convenient times for the purpose of doing the work, that all crops to be grown on the land should be the property of the employer, in which the contractor should have no interest, and that the employer should have no control over the contractor, his employees and equipment, but the contractor agreed that he, and all persons employed by him, should be diligent in the prosecution of the work, which was to be done in good, workmanlike manner. It was further agreed that if at any time the employer should be dissatisfied with the work done by the contractor or the progress of the work, he might immediately terminate the contract on paying to the contractor compensation in the form of the usual wages paid for similar work in the same neighborhood, up to the time of the termination of the contract. It was held by the Supreme Court that the instrument could not be characterized as a lease or transfer of any interest in real property but that it had all the characteristics of an agreement of hiring and could not, under any rule of construction, be held to be any more than a cropping contract. In arriving at this conclusion, the court analyzed the instrument and pointed out the following pertinent facts: first, that but few of the formal phrases ordinarily found in leasehold instruments appear in the agreement; second, that there was no surrender of possession of the premises to the so-called contractor; third, that a division of the net proceeds of the crops to be grown

on the premises did not work a transfer of any interest in the soil; fourth, that the contractor was expressly limited to the planting of certain specified fruit-trees, berries, and vegetables; fifth, that all products grown on the premises were to be the property of the employer and that the contractor should have no interest in them. A comparison of the instrument which the Supreme Court had under consideration in the Okahara case and that which we have presented for our analysis in the instant case discloses that the two instruments differ in many material and important respects. In the first place we find in the agreement in the instant case certain phraseology generally appearing in agreements of lease. The instrument is denominated a lease. There is a statement that the party of the first part leases the premises for the definite term of one year. The compensation to be paid for the land is denominated a share rental. It is, to be sure, not of controlling importance that the instrument characterizes itself as a lease. Nevertheless, this fact is some evidence that the parties intended that it should so operate (*Harrelson* v. *Miller & Lux, Inc.,* 182 Cal. 408 [188 Pac. 800] ; *Morris* v. *Iden,* 23 Cal. App. 388 [138 Pac. 120]). It is also significant that the delivery by the occupant to appellant S. K. Bogosian of his share of the cotton crop was to be made off the premises. In *Harrelson* v. *Miller & Lux, Inc., supra,* it was said that such a fact is strong evidence that the instrument constitutes a lease. It is also significant that so far as appears from the instrument there was a transfer of possession of the premises to the occupant who agreed to take proper care of the pumping plant on the premises and all tools and improvements on the land and to keep the farming implements in good order and repair at his own expense.

It is our opinion that the agreement entered into between appellant S. K. Bogosian and F. B. Cotton, by whose provisions possession of the premises therein described was transferred for the definite term of one year on a share rental of one-half of the cotton crop produced on the premises, constituted a lease agreement and that the finding of the trial court that appellants had violated the covenant not to sublet the premises is supported by evidence of the execution of the instrument hereinabove considered.

Since we are of the opinion that the court's finding with respect to the violation of the covenant not to sublet is justified, it is not necessary to consider the propriety of other findings of the trial court with respect to the commission of waste by appellants and the failure of appellants to furnish alfalfa seed.

In arriving at the conclusion hereinabove stated we have assumed that the record of certain evidence which was introduced at the trial is properly before us. The appeal was taken under the alternative method. Included in the clerk's transcript on appeal is a copy of a document denominated "Stipulation as to Statements of the Case." This instrument obviously purports to set out in narrative form the substantial testimony of certain witnesses. It also contains a copy of the agreement whose construction presents the main problem in the action. The instrument purports to be signed by counsel for both parties and bears the following indorsement: "The foregoing statement is allowed. J. A. Allen, Judge." It appears that no phonographic reporter was present during the trial and that the Reporter's Transcript contemplated by section 953a of the Code of Civil Procedure could not for this reason be prepared. It is at least open to serious doubt whether the so-called statement of the case is properly before this court (*Pierce* v. *Works,* 171 Cal. 684 [154 Pac. 852]; *Jeffords* v. *Young,* 197 Cal. 224 [239 Pac. 1054]; *Koeberle* v. *Coit,* 46 Cal. App. 641 [189 Pac. 727]). However, as we have decided for the reasons herein stated, that the judgment of the trial court should be affirmed, the determination of whether this court has properly before it anything other than the judgment-roll need not be made.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.