[Civ. No. 8290. First Appellate District, Division One.—August 13, 1932.]

CHARLES F. LOWY, Appellant, v. McKEON DRILLING COMPANY (a Corporation) et al., Respondents.

Charles F. Lowy, *in pro. per.*, and Edward J. Cotter for Appellant.

Spalding & Myers, J. Karl Lobdell and Harold L. Watt for Respondents.

KNIGHT, J.—This is an action for declaratory relief. It was alleged in the complaint that for several years past plaintiff had been the owner of eight and one-quarter per cent "of the oil, gas and other hydrocarbon substances produced, saved and sold from the East half of Lot Five (5) in Block one (1) of Webber Tract No. Two (2)", in Los Angeles County; that by mesne assignments the defendant Three-In-One Petroleum Corporation acquired the lease to said premises and sublet the same to the defendant G. C. Fairchild, who in December, 1927, entered into a contract with the McKeon Drilling Company to complete the drilling of an oil-well thereon and bring the same on production; that as a result of said contract plaintiff's ownership in a portion of the oil production from said premises was repudiated; and he asked, therefore, that his rights thereto be determined, and that he be granted such other relief as would be just and equitable. The defendants filed separate answers, consisting merely of denials of plaintiff's ownership in any of

the substances produced on the east half of said lot. The judgment was that plaintiff take nothing by his action, and therefrom plaintiff has taken this appeal.

It appears from the evidence that on February 17, 1922, W. H. Biel, as lessee, entered into a drilling contract with R. C. Steel, whereby the latter was granted the right to drill for oil on two separate parcels of land and to receive for his services a portion of the oil produced by such drilling operations. Parcel one included property not here involved. Parcel two embraced all of lot five of the Webber Tract; and by mesne assignments plaintiff acquired an eight and one-quarter per cent interest in the oil, gas and other hydrocarbon substances produced, saved or sold as a result of the drilling operations prosecuted under the Steel contract. Pursuant to the Steel contract a producing well was completed on parcel one, and afterward a producing well was completed on the west half of parcel two (lot five). Thereafter drilling operations were started on the east half of lot five; but before the well was brought on production the hole was capped, the equipment was dismantled, removed and sold, and nothing further was done toward developing the well until about five years later, when the defendant McKeon Drilling Company, operating under the drilling contract let by Fairchild, the sublessee of the Three-In-One Petroleum Corporation, which had acquired the Biel lease, entered upon the premises, reopened the well, continued the drilling and brought the well on production. ■ The trial court found that plaintiff was not entitled to any portion of the hydrocarbon substances produced under the McKeon contract; and the evidence supports such finding, because, as shown, plaintiff's ownership in any of the production from said lot five or elsewhere was restricted to substances produced under the Steel drilling contract. He acquired no interest whatever in the production under the McKeon contract.

■ The main argument advanced by plaintiff with reference to the above finding is that inasmuch as an oil-producing well was completed on the west half of said lot five under the Steel contract the parties claiming thereunder were vested with an interest in whatever hydrocarbon substances were afterward produced, saved or sold from any part of said lot, regardless of when, how or by whom they

were produced. There is no force in the argument for the reason that the Steel drilling contract upon which plaintiff's right of ownership is founded carried no proprietary interest in the land, nor in any of the production therefrom except such as was produced by the drilling operations prosecuted under the Steel contract; and to repeat, there was no production thereunder from the east half of said lot. Whether or not the letting of the McKeon contract amounted to a breach of the Steel contract is a question not here involved, the action being one purely for declaratory relief.

The trial court went much further however, and found that "the predecessors in interest of the plaintiff abandoned said premises [the east half of lot five], and all rights theretofore by them, or any of them, acquired in said premises under and by virtue of said [Steel] drilling agreement aforesaid", and concluded as matter of law therefrom that "plaintiff has no right, title or interest in or to any of the oil, gas or other hydrocarbon substances produced, saved or sold from the East Half of Lot Five. . . ." As will be observed, the effect of such finding and conclusion was to declare a forfeiture of all future drilling rights under the Steel contract as to the east half of lot five as of the date of the rendition of said findings, to wit, July, 1929. In the state of the pleadings above set forth and in the absence of any affirmative defenses pleaded in that behalf, it may be seriously doubted, as plaintiff contends, whether the trial court had the authority to declare a forfeiture of the rights acquired under the Steel drilling contract; but, assuming that it did, the evidence, in our opinion, is legally insufficient to support a finding and conclusion to that effect. As will be noted they were based entirely upon the fact that after starting the second well on lot five the hole was capped and the equipment dismantled and sold. But the evidence shows without dispute that the lease held by Biel at the time he entered into the Steel drilling contract fixed a ten-year term. The lease was dated September 30, 1921, which gave Biel until September, 1931, to develop oil on any part of lot five, and the right to enter into drilling contracts covering the entire period of the lease. The Steel contract was drawn to that effect, no limitation of time being placed on the termination of the drilling operations to be prosecuted thereunder. In this

regard it provided that if Steel performed the terms and conditions thereof pertaining to parcel one, he was given the option of drilling on parcel two (lot five), providing drilling operations were commenced within a specified time. It further provided that if he "shall perform the conditions and terms of this agreement and shall actually start the drilling operation on parcel No. 2, and the drilling of the well thereon as hereinbefore specified he shall continuously and in good faith prosecute the work of drilling said well with all due diligence until the oil producing sands under said parcel are found or until he is satisfied that said parcel is not oil bearing". And continuing, said contract read: "It is the intention of this agreement and the second party agrees to perform each and all of the terms and conditions of the oil leases held by the party of the first part upon each of said premises hereinbefore described, he, however, binding himself only to drill a well upon parcel No. 1, and having the option of drilling a well on parcel No. 2. If, however, he proceeds to drill a well on parcel No. 2, he shall perform all of the terms and conditions of the oil lease on said parcel No. 2." Admittedly Steel complied with all the terms and conditions of said contract as to parcel one. Thereupon he entered upon parcel two and performed the terms and conditions of· said contract with respect thereto by completing a producing well on the west half of lot five, following which he started to drill a second well on lot five, to wit, on the east half thereof; but as stated, in May, 1923, before the same was brought on production, he discontinued the drilling operations, capped the hole and removed the equipment. However, having completed one producing well on said parcel, he complied with his contract, which did not require him to drill a second well thereon, although he had the option of doing so. And if he started to drill a second well there was nothing in said contract requiring him to complete the same and bring it on production within any specified time, or which required him to drill continuously. Therefore, the fact that in May, 1923, he capped the second well before it was brought on production, and removed the equipment, did not operate as a forfeiture of future rights under the contract because, as shown under the terms thereof, he had the right thereafter, and at any time up to the expiration of the Biel lease, to re-enter the

premises and resume drilling operations thereon. And that being so he was entitled to declaratory relief to that effect.

For the reasons stated the judgment is reversed, with directions to the trial court to modify its findings on the issue of abandonment and thereupon to re-enter judgment defining plaintiff's rights under the Steel contract in conformity with the views herein expressed.

Tyler, P. J., and Cashin, J., concurred.