[Civ. No. 6593. Third Dist.—July 9, 1941.]

MAMIE HIGGINS, Appellant, v. EXETER OIL COMPANY, LTD. (a Corporation), et al., Respondents.

Owen Meredith and Faries & McDowell for Appellant.

Thos. J. Casey and Don S. Irwin for Respondents.

THE COURT.—This is an action to quiet title to a tract of land based upon an alleged violation of a provision in an oil and gas lease forbidding assigning or subletting without the consent of the lessor. The issues were tried before a jury who returned a verdict for plaintiff. Thereafter defendants moved for judgment notwithstanding the verdict, and the motion was granted. This appeal is from the judgment entered by the court after the verdict had been set aside.

In 1924 plaintiff was the owner of a five acre tract and executed this oil and gas lease thereon to the Associated Oil Company. The Associated Oil Company drilled three producing wells which it operated until 1931 when it sold its interest in the leasehold to the Cypress Petroleum Oil Company, which thereafter with the consent of the owner, assigned the lease to the Exeter Oil Company, Ltd., one of the defendants herein.

In 1938 the Exeter Company attempted to negotiate a sublease to the Barnsdall Oil Company, and a sublease was prepared and submitted to Mrs. Higgins for her consent and approval. This she refused to grant, and according to the contention of appellant the proposal was abandoned and the sublease destroyed.

Thereafter a contract of employment was entered into between the Exeter and the Barnsdall Companies, wherein the Barnsdall Company was employed to drill for the Exeter Company one well only, upon the Higgins property. Upon learning of this arrangement, Mrs. Higgins wrote to the Exeter and the Barnsdall Companies, contending the employment of the Barnsdall Company was a subterfuge. However, the Barnsdall Company went upon the land and successfully completed a well producing some thirteen hundred barrels of oil daily, and the Exeter Company tendered to Mrs. Higgins checks aggregating in excess of $9,000 as her proportion of the royalty therefrom, which she refused to accept.

Thereafter Mrs. Higgins, acting under a provision of the assigned lease, wherein it was provided that the lease should not be assigned in whole or in part or any part of the leased premises sublet without her consent in writing first had, notified the Exeter Company that the lease was terminated, and

brought this action to recover the possession of the real property and to terminate the rights therein of the Exeter Company, Ltd., and the Barnsdall Oil Company.

The primary question to be determined on this appeal is whether the so called contract of employment of Barnsdall by Exeter Company constituted a sublease conveying an interest in this real property.

The agreement or letter, as it is referred to by the parties, is too long to set forth in detail, but generally it recited that Exeter Oil Company, the writer thereof, was the owner of an oil and gas lease upon the described property, and desired to hire Barnsdall Company to drill and thereafter operate for the Exeter Company, an oil and gas well to a designated depth upon certain conditions. Among those conditions and terms, were that the Barnsdall Company could, if unsuccessful in the first well, either terminate this contract or commence another well; it was required to comply with all governmental regulations; carry on the work in a workmanship like manner, and permit no waste of gas or oil. The Barnsdall Company was authorized to enter upon the premises and to construct thereon derricks, tanks, pipe lines and roads which might be necessary for the performance of the contract, and to furnish all materials and equipment necessary for the performance of the work; to keep a written record and log of its operations, and to do all work done thereunder at the cost of the Barnsdall Company, subject to reimbursement as follows; from all gas and oil sold from the well, one-sixth should be deducted as the land owner's share or royalty. The remaining five-sixths should be paid to the Barnsdall Oil Company until that company had been fully reimbursed for moneys advanced in the drilling and operation of the well, and after being so reimbursed the lessee was to pay to the Barnsdall Company the costs of operation and sixty per cent of the remaining five-sixths. The letter then specified what were to be considered proper costs and disbursements, including insurance premiums. In case of default the Exeter Oil Company could, after notice, terminate the contract, and it was expressly provided that the Exeter Oil Company was not by this letter conveying or assigning any interest in the premises, that it was not a partnership nor joint adventure, and that all work done by the Barnsdall Company was to be at their own sole cost and expense.

From the foregoing survey it will be seen that the letter contained no words of transfer or assignment of any estate in any real property; that the Exeter Oil Company did not transfer or surrender its right of possession of the premises; no interest in the oil was granted, the compensation being from the proceeds of the oil and gas. The employment was limited to one well, and all oil and gas belonged to Exeter Company and was to be sold by it to whomever it might select. The Exeter Company retained possession of the premises, and there was lacking those persuasive elements of a sublease— exclusive possession, a fixed term, a fixed rental and right of reentry in event of covenant broken.

In *Lowy* v. *McKeon Drilling Co. et al,* 125 Cal. App. 367 [13 Pac. (2d) 783], involving an oil lease, it was held that a drilling contract which gave a portion of the oil proceeds for drilling services conveyed no interest in the land. Also an agreement to receive an interest in the royalty conveyed no interest in the realty (*In re Lathrap,* 61 Fed. (2d) 37), nor did a crude oil contract, whereby one was given the right to buy all the oil produced from a given well or from a particular parcel of land, convey an interest in the land. (*Richfield Oil Company* v. *Hercules Gasoline Company,* 112 Cal. App. 431 [297 Pac. 73].)

Appellant relies strongly upon *Frasier* v. *Witt,* 62 Cal. App. 309 [217 Pac. 114]. There we find a grant of exclusive possession, a fixed term, a fixed rental, and a covenant for reentry, all absent from the letter here under examination. In *Sherwin* v. *Bogosian,* 112 Cal. App. 359 [296 Pac. 641], also relied upon by appellant the court pointed out some of the elements which differentiate it from the agreement in the Okahara case (*In re Okaraha,* 191 Cal. 353 [216 Pac. 614]), and which distinguish it from the case at bar.

We are also referred to *Spalding* v. *United States,* 97 Fed. (2d) 697, (9 Circuit) where an oil company was granted the right to go upon the lands and develop wells, the oil so produced to belong to the owner of the lands, the owner agreeing to pay to the oil company a stipulated percentage of the cash returns from the sale of the oil. There the court did not hold that an interest in the land was assigned, but merely held that for tax purposes the oil company had acquired a depletable interest in the oil and gas in the leased property. We have also examined *Weintraub* v. *Weingart,* 98 Cal. App. 690

[277 Pac. 752] ; *Crowell* v. *City of Riverside,* 26 Cal. App. (2d) 566 [80 Pac. (2d) 120] ; and *Levey* v. *Hockwald,* 6 Cal. App. 417 [92 Pac. 872], cited by appellant, but find each is readily distinguishable from the present problem.

Appellant attaches some importance to the provision in the letter whereby title is retained by Barnsdall Company in all materials and equipment furnished in drilling the well until that company had been fully reimbursed for the cost thereof, after which the Exeter Company became the owner of an undivided 40% interest therein. We are unable to find anything in this other than a business arrangement between a contractor and an owner for their mutual protection, negotiating at arm's length, one to obtain an experienced oil driller to produce a well, the other willing to undertake the work but wanting to protect itself from the risks involved. Naturally both were concerned as to the security of payment, the proper location of the well, the right of free and unimpeded ingress and egress to the work, a mutual accounting and full disclosure of oil produced and the cash proceeds derived therefrom. The language of the agreement, the contention of the two oil companies, and the implied finding of the trial court all impel us to that conclusion.

The judgment is affirmed.

A petition for a rehearing was denied August 8, 1941, and appellant's petition for a hearing by the Supreme Court was denied August 28, 1941. Carter, J., voted for a hearing.