[Sac. No. 351.  In Bank.—August 2, 1898.]

CATHERINE CLARKE and J. E. CAIN, Executors, etc.,
Appellants, v. G. M. COBB, Defendant.  E. C. LANGE-
NOUR et al., Intervenors, Respondents.

121  595
128   36
121  595
141  742

LANDLORD AND TENANT—LEASE—RENT PAYABLE IN PRODUCE.—A contract by
which farming lands were demised and let for a term of years to
one who agreed to give annually for the use thereof a certain por-
tion of the crops of grain and other products grown thereon is a
lease, creating the conventional relation of landlord and tenant
between the parties, and not a cropping contract. The portion of
the grains and fruits to be delivered to the landlord, when gathered,
is rent, which is a compensation for the use of the land, and may be
made payable in any chattels or products of the soil, equally as well
as in money.

ID.—COTENANCY IN CROPS—PROPERTY OF TENANT—RENT.—Though a land-
lord and tenant, who are not cotenants of the land, may be made
cotenants in the crops to be raised, such cotenancy does not exist,
where there are no appropriate words in the lease to indicate it;
and, in the absence of such words, the products to be delivered to
the landlord after harvest will be deemed the property of the ten-
ant until the delivery is made, and treated as rent to be then paid.

ID.—SALE OF LEASED LAND UNDER FORECLOSURE—APPORTIONMENT OF RENT
TO PURCHASER.—A sale under the foreclosure of a mortgage upon leased
land, upon which a portion of the products of the soil was to be
delivered annually as rent, and which became due and payable for
the year, after the purchase from the sheriff, and before the expi-
ration at the time for redemption, does not entitle the purchaser to
the whole of the rent; but he is entitled, under section 707 of the
Code of Civil Procedure, only to an apportionment of a share of
the annual rent, in proportion to the unexpired part of the lease-
year existing after the purchase.

ID.—ASSIGNMENT OF LEASE—RECOVERY OF RENT.—The effect of the sale by
the sheriff under foreclosure was equivalent to an assignment of
the lease by the landlord to the purchaser for such portion of the
lease-year as existed between the time of purchase and the expira-
tion of the time for redemption, while the purchaser held the cer-
tificate of sale; and his recovery of rent is limited to the amount
of rent earned for that time.

ID.—CERTIFICATE OF SALE—INTEREST IN CROPS.—The certificate of sale of
land, issued by the sheriff, does not pass any interest in the crops
grown upon the land and ripened and harvested during the period
of redemption.

APPEAL from a judgment of the Superior Court of Yolo
County.  W. H. Grant, Judge.

The facts are stated in the opinion of the court.

B. F. Howard, for Appellants.

N. A. Hawkins, and H. C. Watkins, for Respondents.

GAROUTTE, J.—W. J. Clarke and plaintiffs and appellants, executors of the estate of W. J. Clarke, deceased, respectively entered into contracts with one Cobb, whereby said Cobb agreed to farm and cultivate certain lands to grapes and grain for a term of years. For present purposes these contracts were the same, and it was provided therein that the lands were demised and let to said Cobb, he agreeing to give annually for the use thereof a certain portion of the crops of grain and other products grown thereon. At the time these contracts were entered into mortgage liens rested upon the realty. Subsequently, these liens were foreclosed, and under such foreclosure proceedings the mortgagees became the purchasers of the land, and certificates of sale were issued to them. The sales under foreclosure proceedings took place in January and April, respectively, of 1896, and, no redemption intervening, deeds passed to the purchasers six months thereafter. Crops of various kinds were cultivated upon these lands by Cobb under his contracts during the cropping season of 1895-96; and subsequent to the aforesaid sales of the land, and during the period of time allowed by law for redemption, these crops were gathered and harvested by Cobb. As provided in his contract, he set aside the portion thereof to be given for the use of the land. But, upon notice and warning from the purchasers at the sale, he refused to deliver the same to the plaintiffs, and this action was brought against him by them for a recovery of the possession thereof. Clarke died subsequent to the making of the contract with Cobb, and prior to the foreclosure proceedings. The mortgagee purchasers at the sale, claiming the property by virtue of their purchase, intervened, and have become the real defendants in interest.

It is conceded by all parties that the merits of this litigation are dependent upon the construction to be given that portion of section 707 of the Code of Civil Procedure, which provides: "The purchaser, from the time of the sale until a redemption,

and a redemptioner, from the time of his redemption until another redemption, is entitled to receive from the tenant in possession the rents of the property sold, or the value of the use and occupation thereof."

At the threshold of this investigation it becomes important to determine the legal status of the contracts entered into with Cobb by Clarke and his executors. That these contracts were leases, that the conventional relation of landlord and tenant existed between the parties, and that the grains and fruits to be delivered to the landlord when gathered and harvested were rent, we are entirely satisfied. Rent is a compensation paid for the use of land. It need not be money. Any chattels or products of the soil serve the purpose equally as well. These contracts are in no sense cropping contracts. The single difference differentiating them from ordinary conventional leases is that the rent is to be paid in products of the·soil, after harvest, rather than in money. But such difference is wholly immaterial, as changing the character and aspect of the instruments.

It is substantially conceded that the landlord and tenant are not cotenants in the land, but it is claimed that they are cotenants in the crops to be raised. The authorities of this state recognize that such conditions may exist. (*Bernal v. Hovious*, 17 Cal. 544; 79 Am. Dec. 147; *Walls v. Preston*, 25 Cal. 59.) But we find no apt words here to disclose such a status. When it is established that a certain contract is a lease, and that the relation of landlord and tenant exists between the parties, there must be some appropriate words in the contract to indicate that the crops raised on the lands are to be held in cotenancy, or such will not be the conclusion reached. If there is nothing in the language to indicate that intention, then the products to be delivered to the landlord after harvest, by the tenant, will be deemed the property of the tenant until that time, and treated as rent to be then paid.

There is but little authority against the views we have here declared. The New York authorities almost stand alone as taking a contrary position. The decisions of the highest courts of at least a dozen states hold, upon facts similar to those at bar, in entire accord with the views we entertain. (See Freeman on Cotenancy, sec. 100, note 1.) This court held in *Bernal v.*

*Hovious, supra,* that the contract under consideration in that case was a cropping contract; and, of course, when such is the fact, the title to the products of the land necessarily vest in both parties, for the relation of cotenancy is created. The facts of that case are broadly different from the facts here presented. Again, that decision is based solely upon the New York authorities. In *Walls v. Preston, supra, Bernal v. Hovious, supra,* and the New York authorities upon which it is based, are reviewed and explained, and the doctrine of the Bernal case limited. In *Walls v. Preston, supra,* the facts were entirely similar to those found in this record, and after a careful consideration of the principles involved the court said: "It clearly appears to us that the parties in this case intended to make a lease, and that the instrument executed by them was a lease; that its effect as such was not destroyed by their having contracted for the payment to the lessor of a portion of the specific crops to be produced, and that that covenant was an agreement to pay the rent of the premises out of the crops."

Having arrived at the conclusion that the crops involved in this litigation were rent due from the tenant Cobb to his landlord, Do the provisions of section 707 of the code heretofore quoted give them to the purchaser at the foreclosure sale? These products were the rents to be annually paid for the use of agricultural and vineyard lands. They were due and payable, at a certain period of the year, and that period occurred after the purchase from the sheriff, and prior to the time when right of redemption was barred. These contracts stood exactly as though the land had been rented for a cash rental of twelve hundred dollars per annum, payable at harvest time. Upon such a state of facts it could not be claimed for a moment that the purchaser at the sheriff's sale would be entitled to the entire amount of rent due and payable for the use of the land for the entire year. If the foreclosure sale had occurred one day prior to the day when the rent was due and payable, upon such a line of reasoning the purchasers would be entitled to the entire twelve hundred dollars. If rent was payable semi-annually, and no rent happened to fall due during the time intervening between the purchase under foreclosure and the expiration of redemption, it certainly could not be claimed that the purchaser

was not entitled to any rent. In the eyes of the statute the material question is not, When does rent become due and payable? but it is, What amount of rent has the property earned subsequent to the purchase, and prior to the redemption? By virtue of the statute, if the property is not rented the purchaser may sue for the value of the use and occupation; and the value of the use and occupation would be such value for the time the purchaser held under his certificate of sale. And, likewise, a recovery for rent would necessarily be limited to the amount earned for that time.

In the case at bar, where the rent is an annual rent, the purchasers at the foreclosure sales are entitled to an amount of rent in proportion as the time intervening between their purchases and the expiration of the year-term bears to one year. (Providing, of course, the six months' term of redemption had not expired in the mean time.) In *Reynolds v. Lathrop,* 7 Cal. 43, it is held that: "The effect of the sale was equivalent to an assignment of the lease for the time." The contention that rent payable by the year is indivisible is unsound. Undoubtedly, the statute could provide for a division of it. It must be borne in mind that the whole matter of redemption is purely statutory, and the statute seems to contemplate a proportionate division of the rents. It was intended by this statute to give the purchaser at the sale the fruits of the land produced while he held the certificate of purchase—only this and nothing more. To support a construction which would give the purchaser at the sale— perchance a purchaser of a single day—the rents of property under a lease for years, for the sole reason that rents for the entire period happen to become due and payable upon that day, would seem to wander far from the intention of the legislature in enacting the statute. If such construction obtain, evidently the statute would at once become useless legislation. For upon the day of sale, by reason of previous mutual arrangements between the judgment debtor and the tenant, all questions of rent would have been compromised and settled. We cannot bring ourselves to hold that if the mortgagor himself is in possession he is liable only for the value of the use and occupation after the sale, while if the tenant under the mortgagor is in possession, all rents owing by the tenant for an unlimited period in the past, and which

happen to become due while the certificate of purchase is held by the purchaser at the sale, are his property. As to the general principle of law, that a transfer of real estate carries with it rents earned but not yet due, we are not concerned.

There is nothing in the contention of respondents that the purchasers at the sale, conceding that the landlord at the time had an interest in the crops, took such interest under the certificate of sale issued by the sheriff. If there had been no tenant, and the owner had cultivated the land and possessed the crop, such crop would not have passed by the certificate of sale. This court has repeatedly held that the owner has the right to retain and harvest the crops grown and ripened pending the time of redemption.

For the foregoing reasons the judgment is reversed, with directions to the trial court to enter judgment in accordance with the views heretofore expressed.

Van Fleet, J., McFarland, J., Temple, J., and Henshaw, J., concurred.

HARRISON J., dissenting.—I dissent. Section 707 of the Code of Civil Procedure declares: "The purchaser from the time of the sale until a redemption, and a redemptioner from the time of his redemption until another redemption, is entitled to receive from the tenant in possession the rents of the property sold, or the value of the use and occupation thereof." The term "rents," as here used, signifies the amount agreed to be paid by the tenant in possession, as distinguished from the value of the use and occupation, which is to be paid by the judgment debtor, if he remains in possession. The purchaser is entitled to all of these "rents" which accrue after the sale of the property, subject to his obligation to refund the amount he may receive in case the judgment debtor shall redeem from the sale. Section 700 of the Code of Civil Procedure declares: "Upon a sale of real property the purchaser is substituted to and acquires all the right, title, interest, and claim of the judgment debtor thereto." By virtue of this section the purchaser acquires the entire title of the judgment debtor to the property sold, and is entitled to the rents thereafter to accrue therefrom, as fully as if the sale was made by the judgment debtor himself. A sale by

the sheriff is equivalent to a sale by the judgment debtor. (*Blood v. Light*, 38 Cal. 649; 99 Am. Dec. 441.)    "The execution of the deed gave to the purchaser at the sale no new title to the land purchased by him, but was merely evidence that his title had become absolute." (*Robinson v. Thornton*, 102 Cal. 680.) "The purchaser has already bought the land and paid for it.    The sale is simply a conditional one which may be defeated by the payment of a certain sum by certain designated parties, within a certain designated time.    If not paid within the time, the right to a conveyance becomes absolute without further sale, or other act to be performed by anybody. . . . . During the period which elapses between the sale and expiration of the time for redemption the statute regards the purchaser as the owner in equity, and gives him the rents and profits, or the value of the use and occupation.    In short, it gives him the entire beneficial interest in the property, except the actual possession." (*Page v. Rogers*, 31 Cal. 293.    See, also, *Duff v. Randall*, 116 Cal. 226; 58 Am. St. Rep. 158.)    In *Reynolds v. Lathrop*, 7 Cal. 43, it was held that before the expiration of the time for redemption the purchaser could maintain an action against the tenant for rent, according to the terms of his lease. The court said: "But we think it clear that Lathrop was responsible to the plaintiff for the rents in the way he would have been to the judgment debtor had no sale been made, and that consequently the plaintiff could sue for the rent as often as it fell due under the terms of the lease existing when he became purchaser. The effect of the sale was equivalent to an assignment of the lease for the time."    If, instead of the sale by the sheriff, the judgment debtor had, at that time, assigned the lease for the time allowed for redemption, his assignee would have been entitled to all the rents which might accrue during the term for which the lease was assigned.    A grant of the reversion of an estate passes the rights to rents that subsequently become due as incident to the reversion, but not the rents then in arrear.    (4 Kent's Commentaries, 354; *Sampson v. Grimes*, 7 Blackf. 176; *Peck v. Northrop*, 17 Conn. 217.)    "The rent is incident to the reversion and passes with it, and the grantee, by force of the conveyance, has a right to receive all rent accruing upon the estate; it is a part of the realty and passes by the deed." (*Burden v. Thayer*, 3 Met. 76; 37 Am. Dec. 117.)

In the absence of an agreement or a statute for that purpose there can be no apportionment of rent which, by the terms of the lease, is payable at stated intervals. "When rent is payable quarterly or yearly, the annual or quarterly payments are not to be apportioned if the reversion is transferred before the time at which the rent becomes due. The right to such quarter's or year's rent passes with the reversion. In the present case, had the year's rent become due five days after instead of five days before the mortgage, it would have passed by it to the plaintiff." (*Burden v. Thayer, supra.*) Taylor, in his Landlord and Tenant, section 389, says: "It is also well settled that in all cases of periodical payments accruing at intervals, and not *de die in diem,* there can be no apportionment, for rent will not be apportioned in respect of time, except by force of a statute, or of some special provision of the lease." Kent says (3 Kent's Commentaries, 470): "The rule at common law was that neither law nor equity would apportion rent as to time, and, therefore, if the tenant for life gave a lease for years, rendering a yearly rent, and died in the course of the year, the rent could not be apportioned, and the tenant would go free of rent for the first part of the year. The principle was that an entire contract could not be apportioned." (See, also, *Zule v. Zule,* 24 Wend. 76; 35 Am. Dec. 600; *Marshall v. Moseley,* 21 N. Y. 280; Woodfall on Landlord and Tenant, sec. 403.) By the statute of 2 George II, chapter 19, and subsequent statutes in England, and also in some of the states, the common-law rule has been superseded, and in certain cases an apportionment of rent is authorized in the case of the death of the lessor between two rent days. But, as no statute of this nature has ever been adopted in this state, the common-law rule must control. This question was very fully considered in *Bank of Pennsylvania v. Wise,* 3 Watts, 394, where the lessor's interest in a lot of land and house thereon was sold at sheriff's sale. The land was held at the time of the sale by a tenant, under a lease for five years, executed three years previously, at an annual rent payable half-yearly, under which a half year's rent fell due on the 1st of February. The sale was made by the sheriff in January, and the court held that there could be no apportionment between the purchaser and the judgment debtor, but that the purchaser was entitled to the entire rent, saying: "The idea of ap-

portioning the rent that becomes payable after the purchaser of a reversionary interest in fee at a sheriff's sale has paid the purchase money and received his deed of conveyance for it, between him and the defendant in the execution as whose estate it was sold, is unknown to the law, and cannot be reconciled with any of its analogous and fixed principles." In *Kline v. Chase,* 17 Cal. 596, a redemption was made twenty-one days after the sale, but it was held that the purchaser was entitled to all the rents which accrued between the time of sale and redemption. At that time the law did not require the purchaser, in case of a redemption, to account for any of the rents which he might have received. In *Martin v. Martin,* 7 Md. 368, 61 Am. Dec. 364, the tenant had leased a farm for two years, agreeing to pay as rent one-half of the wheat and corn raised thereon. After paying the rent for the first year, and before any rent was due for the second year, he accepted certain orders drawn upon him by his landlord, payable out of the rent. After these orders had been accepted, but before any rent was due, the farm was sold at sheriff's sale under a judgment against the landlord. It was held that, notwithstanding the acceptance of these orders, the tenant was liable to the purchaser for the whole rent of that year.

There is no injustice in this rule. If the land is under lease, that fact is considered by the purchaser in making his bid, and the amount of rent which he will receive from the tenant is an element in determining the amount of his bid. If, by the terms of the lease, the rent day fell prior to the sale, it would belong to the judgment debtor, and the property would have less value than if it should fall after the sale. "By allowing the purchaser to take all the rent becoming due after the sale it adds so much to the value of the lessor's interest in the land at the time of sale, and secures to him the benefit of the partial rent not due at that time in the way that it can be done consistently with established rules of law." (*Martin v. Martin, supra.*)

To hold that the purchaser is entitled to only the amount of rent "earned" by the land subsequent to the sale would in many cases render the provision of the statute nugatory, for, if that is the limit of his right, it must also be held that he is entitled to whatever the land has earned during that period. The ten-

ant cannot be compelled to pay the rent otherwise than in accordance with the terms of his lease, and if, by these terms; he has paid the rent for a portion of the period for redemption, the fact that the land has earned some rent during a part of that period cannot impose upon him any liability to the purchaser for the rent so earned. If the tenant has paid the rent in advance before the sale, and his term expires during the period for redemption, he cannot be compelled to pay any further sum for his use and occupation of the land. So if, by the terms of his lease, there is no rent payable during this period, the purchaser can have no claim upon him for the rent. He cannot be made liable beyond the terms of his lease, whether he has paid the rent before the sale or is not required to pay it until after the time for redemption has expired.