## ADAMS v. THORNTON.*

### Court of Appeal, Third District; July 25, 1905.

#### 82 Pac. 215.

**Cropping Contract.—Where Plaintiff, the Owner of Certain Orchards,** contracted to let defendant a house and furnish implements, horses, wagons, feed, spraying materials, boxes, and trays for curing and marketing the fruit, furnish new trees to replace missing ones, pay for one-half of boxing materials when shipped, and, when dried, to pay for the expenses of cutting, drying, and sacking his share, and in consideration of defendant's labor in raising, harvesting, shipping, and marketing the fruit, the latter was to have one-half of the crop, the contract was a mere cropping contract, and not a lease, and plaintiff and defendant were therefore tenants in common of the crop.

**Cropping Contract—Replevin.—Where Plaintiff and Defendant were Tenants in Common** of a crop raised by defendant under a cropping contract, plaintiff was not entitled to maintain replevin against defendant for a portion of the crop alleged to have been wrongfully taken from plaintiff's premises.

APPEAL from Superior Court, San Joaquin County; Frank H. Smith, Judge.

Action by W. H. Adams against Arthur Thornton. From a judgment for plaintiff, defendant appeals. Reversed.

Louttit & Middlecoff for appellant; Nicol & Orr and J. M. C. Murphy for respondent.

BUCKLES, J.—The complaint in this action was claim and delivery. The defendant set up by way of answer a contract, and alleged that under it he and plaintiff were copartners in carrying on the business of fruit growing and dividing the profits between them, and asked for a dissolution and an accounting. Judgment was for the plaintiff and for the

---

*Rehearing denied August 23, 1905.

return to him of all the property mentioned in his complaint, and for four dollars, damage and costs. Numerous errors are alleged in the bill of exceptions in the ruling of the trial court in the introduction of evidence, but in the briefs of counsel before us these matters are not touched upon at all, and only two points are presented for our consideration, viz.: 1. Were the plaintiff and defendant cotenants in the fruit in controversy? And 2. If cotenants, could the plaintiff maintain replevin against the defendant for the common chattels?

For the better understanding of the matter it is necessary to set out the contract under which the parties were operating, or, at least, so much of it as will assist in determining the questions involved, and it is as follows:

"New Hope, Cal., Nov. 1, 1899.

"This indenture, made this 1st day of November, 1899, between Arthur Thornton, of New Hope, county of San Joaquin, and state of California, as party of the first part, and W. H. Adams, as party of the second part, witnesseth: That the said Arthur Thornton, party of the first part, for and in consideration of the covenants hereinafter stated, hath let, and by these presents doth grant, demise, and let, unto the said party of the second part, W. H. Adams, all that parcel or parcels of orchard lands situated in the county of San Joaquin, near New Hope, and described as follows: [Then follows the description of a 50-acre orchard and a 10-acre orchard]—for the term of one year from above date. The said party of the first part does agree with the party of the second part that he will let him a house, that he will furnish implements, horses, wagons, feed, also spraying materials, also boxes and trays necessary for the curing and marketing of the fruit. The party of the second part does agree with the party of the first part that he will in due season prune the trees of said orchard in a workmanlike manner; that he will remove all brush and replant all trees needed to fill vacancies (said Thornton to furnish trees); that he will thoroughly spray said trees and plow and cultivate said lands; that he will properly thin fruit, will pick and deliver to railroad or steamer landing when shipping to cannery, and share and share alike, or, if for eastern market, will pack all fruit for shipment, furnishing crates or boxes for same, the said party of the first part to pay for one-half of boxing materials and packing, and share and share alike, or, if dried,

the party of the second part agrees to cure the fruit properly and to deliver one-half of the dried fruit to the party of the first part, the said party of the first part to pay for the expense of cutting, drying and sacks for his share of the fruit.'' Signed by both parties.

This contract was continued in force to November 1, 1902. A settlement had been made for the crop of each year up to November, 1902. There remained on hand of the crop of 1902, $373\frac{1}{2}$ sacks of dried apricots, which were in the possession of the plaintiff. On October 9, 1902, during the absence of plaintiff, the defendant came and carried said dried apricots away, and the plaintiff now seeks by his suit to have them returned to him. While the agreement set out and under which the parties were operating is called therein a lease, yet under the authority of Bernal v. Hovius, 17 Cal. 542, 79 Am. Dec. 149, it must be deemed only a cropping contract, and the parties are cotenants in the fruits raised during the time of the contract, and each has an equal right with the other to the possession of the whole of said fruit, and, under the general rule, neither can maintain a suit against the other for the possession of the fruit. In Walls v. Preston, 25 Cal., at page 62, the court says: ''It is the general rule that, where a term is created, the possession given to the occupant, and the produce agreed to be paid is to be paid as rent, then the instrument is to be regarded as a lease. It is also a general rule that, where the occupant covenants to deliver to the owner a portion of the crops, the agreement is held to be a cropping contract—a letting upon shares—and the owner and occupant are tenants in common of the crop.''

Plaintiff relies upon Clarke v. Cobb, 121 Cal. 596, 54 Pac. 74, as furnishing a different doctrine. In that case Justice Garoutte, who wrote the opinion, says: ''The parties entered into contracts whereby one Cobb agreed to farm and cultivate certain lands to grapes and grain for a term of ten years. . . . . It was provided therein that the lands were demised and let to said Cobb, he agreeing to give annually for the use thereof a certain portion of the crops of grain and other products grown theeon.'' There was a mortgage on the land, which was foreclosed, and the land sold while Cobb's contracts were in force. The justice continues: ''Crops of various kinds were cultivated upon these lands by Cobb under his contracts during the cropping season of 1895–96; and subse-

quent to the aforesaid sales of the land, and during the period of time allowed by law for redemption, these crops were gathered and harvested by Cobb. As provided in his contract, he set aside the portion thereof to be given for the use of the land." The question in that case was as to whether the purchaser or redemptioner was entitled to these rents. Justice Garoutte further says: "That these contracts were leases, that the conventional relation of landlord and tenant existed between the parties, and that the grains and fruits to be delivered to the landlord when gathered and harvested were rent, we are entirely satisfied. . . . . The authorities of this state recognize that such conditions may exist," such as cropping contract and cotenancy in the crops raised. "When it is established that a certain contract is a lease, and that the relation of landlord and tenant exists between the parties, there must be some appropriate words in the contract to indicate that the crops raised on the lands are to be held in cotenancy, or such will not be the conclusion reached. If there is nothing in the language to indicate that intention, then the products to be delivered to the landlord after harvest, by the tenant, will be deemed the property of the tenant until that time, and treated as rent to be then paid."

The contract in this case is vastly different from a contract where the landlord is to furnish the land and do nothing more but receive a stipulated part of the crop as rent, as was the case in Clarke v. Cobb. In the case at bar, Arthur Thornton agrees that he will let Adams a house, that he will furnish implements, horses, wagons, feed, also spraying materials, also boxes and trays for the curing and marketing of the fruit, furnish new trees to replace missing ones, also to pay for one-half of boxing materials when shipping, and, when fruit is to be dried, to pay for the expense of cutting, drying, and sacks for his share. His labor, and his capital, other than the land, went into the crops in raising, harvesting, shipping, and marketing. It seems to me they could not have made a clearer cropping contract, even though they had used the words, "We hereby enter into a cropping contract." It appears very plainly what the intention of the parties was. Thornton put up his land, his materials, his feed, his horses, and furnishings against the labor and skill of Adams, and they were to "share and share alike." Fruit was shipped in boxes, marked "Thornton & Adams." I presume, when

the fruit was shipped to the eastern market, they stood "share and share alike" on losses, which sometimes do happen. Under the view taken by us the motion for nonsuit should have been granted.

Judgment is reversed.

We concur: Chipman, P. J.; McLaughlin, J.