(No. 6468.   December 9, 1937.)

CALLIE L. FERGUSON, Appellant, v. TIM SULLIVAN, Respondent.

[74 Pac. (2d) 183.]

A. H. Oversmith, for Appellant.

Abe Goff, for Respondent.

AILSHIE, J.—This is an appeal from a judgment sustaining a demurrer to plaintiff's complaint and dismissing the action. The appellant was the owner of a tract of farm land in Latah county and executed a mortgage thereon in favor of respondent. Default was made in payment of the mortgage debt and foreclosure was had and on execution sale, which occurred May 25, 1936, respondent bid in the property. At the time of the sale, the land was in the possession of and being cultivated by one Virgil Hurlbert who was a lessee of the property under what is known as a crop lease, whereby he had contracted to deliver to the landlord (appellant) "one third of the crop delivered in the warehouse at Genesee,

Idaho," as annual rental of the place. When the crop matured it was harvested by Hurlbert and stored in the warehouse in accordance with the terms of the lease, and upon demand of the purchaser (defendant), Hurlbert attorned to defendant, as landlord, and delivered to him the entire one-third of the crop.

After the expiration of the cropping and leasehold year plaintiff made demand on defendant for the proportionate share of the crop rent, which the time elapsed from the first of the leasehold year to the date of the sale bears to the entire year, on the theory that all earned rental to the date of the execution sale belonged to the plaintiff and that defendant was entitled to collect only rentals accruing after that date. Defendant refused the demand and this action was commenced for the collection of a proportionate share of the rentals which it is claimed is 240/365ths of 47,813 pounds of wheat.

We are confronted with one and only one question in this case, namely: Is the purchaser at execution sale on foreclosure entitled to receive and retain all of the grain or crop rental for the entire year in which the sale is made and the certificate is issued, or must he prorate with the judgment debtor for the portion of the year which has expired prior to the time of sale? The answer to this rests upon a correct interpretation of the provisions of secs. 8–406 and 8–407, I. C. A. Section 8–406, provides as follows:

"Until the expiration of the time allowed for redemption, the court may restrain the commission of waste on the property, by order granted with or without notice, on the application of the purchaser or the judgment creditor. But it is not waste for the person in possession of the property at the time of sale, or entitled to possession afterward, during the period allowed for redemption, to continue to use it in the same manner in which it was previously used; or to use it in the ordinary course of husbandry; or to make the necessary repairs of buildings thereon; or to use wood or timber on the property therefor; or for the repair of fences; or for fuel in his family, while he occupies the property."

Sec. 8–407, in so far as is material to the determination of this case, is as follows:

"The purchaser, from the time of the sale until a redemption, and a redemptioner from the time of his redemption until another redemption, is entitled to receive, from the tenant in possession, the rents of the property sold, or the value of the use and occupation thereof. But when any rents or profits have been received by the judgment creditor or purchaser, or his or their assigns, from the property thus sold preceding such redemption, the amount of such rents and profits shall be a credit upon the redemption money to be paid . . . . "

Secs. 706 and 707 of the California Code of Civil Procedure are in the identical language of the foregoing sections of our statute and it is evident that our statutes were copied from the California code. In 1898 the Supreme Court of California had occasion to consider this question in the case of *Clarke v. Cobb*, 121 Cal. 595, 54 Pac. 74, and after stating that:

"It is conceded by all parties that the merits of this litigation are dependent upon the construction to be given."
Sec. 707 of the Code of Civil Procedure, the court said:

"In the eyes of the statute, the material question is not, when does rent become due and payable? but it is, what amount of rent has the property earned subsequent to the purchase, and prior to the redemption? By virtue of the statute, if the property is not rented, the purchaser may sue for the value of the use and occupation; and the value of the use and occupation would be such value for the time the purchaser held under his certificate of sale. And, likewise, a recovery for rent would necessarily be limited to the amount earned for that time.

"In the case at bar, where the rent is an annual rent, the purchasers at the foreclosure sales are entitled to an amount of rent in proportion as the time intervening between their purchases and the expiration of the year term bears to one year; providing, of course, the six-months term of redemption had not expired in the meantime. In *Reynolds v. Lathrop*, 7 Cal. 43, it is held that 'the effect of the sale was equivalent

to an assignment of the lease for the time.' The contention that rent payable by the year is indivisible is unsound. Undoubtedly, the statute could provide for a division of it. It must be borne in mind that the whole matter of redemption is purely statutory, and the statute seems to contemplate a proportionate division of the rents. It was intended by this statute to give the purchaser at the sale the fruits of the land produced while he held the certificate of purchase; only this, and nothing more. To support a construction which would give the purchaser at the sale (perchance, a purchaser of a single day) the rents of property under a lease for years, for the sole reason that rents for the entire period happen to become due and payable upon that day, would seem to wander far from the intention of the legislature in enacting the statute.''

*Clarke v. Cobb, supra,* was cited and approved by the same court in *Woodsend v. Chatom,* 191 Cal. 72, 214 Pac. 965. It was again cited and quoted from with approval in *Shintaffer v. Bank of Italy etc. Assn.,* 216 Cal. 243, 13 Pac. (2d) 668, and in conclusion the court said:

''It was by virtue of this principle that we held in *Clarke v. Cobb, supra,* that the purchaser was not entitled to the entire portion of the crop harvested during the period of redemption which was payable as rental, but only to the portion earned during that period.''

Montana has the same statute as we have, which was copied from California. In the case of *Blodgett Loan Co. v. Hansen,* 86 Mont. 406, 284 Pac. 140, the supreme court of that state recognized that:

''At common law, rent was not apportionable in respect of time, and the owner of the property at the time of the accrual of the rent was entitled to the rent for the entire period. 36 C. J. 381. But the common-law rule has been changed by statutes in many states.''

The court then cited *Clarke v. Cobb, supra,* and quoted at length from the opinion and said: ''Rents payable in crops are generally held to be divisible and may be subject to apportionment.''

Arizona adopted the same statute from California and in the case of *First Nat. Bank of Yuma v. Maxey,* 34 Ariz. 438, 272 Pac. 641, the supreme court of that state quoted with approval at length from *Clarke v. Cobb* and then proceeded as follows:

"On examining the statute carefully, it appears the primary object thereof was to change the old rule that rent could not be apportioned, and that it followed the legal title at the time is was *due,* to the principle that it was apportionable on the basis of the title at the time it was *earned.* . . . . That the Legislature intended the *earned* rent to follow the complete title is shown by the remainder of the statute cited, which provides that, in case of a redemption, the purchaser accounts to the redemptioner for the rents collected during the time the former held the certificate of sale. In other words, while the mortgagor holds both legal and equitable titles, he is entitled to the rent earned; when he loses the equitable title, the earned rent goes to the one who has purchased it, and who presumably will eventually secure the legal title also. Should there be a redemption, however, and both legal and equitable title pass to some one else, that person receives the rent, dating back to the time when the mortgagor no longer held both titles. The rent thus belongs eventually to the ultimate holder of both the legal and equitable titles, according to the time it was *earned.* This conclusion is in consonance with the language and apparent intent of the statute, and with the dictates of common sense, if we are to assume that rent may ever be apportioned."

Respondent seems to place his chief reliance on the cases of *Devereaux Mortgage Co. v. Walker,* 46 Ida. 431, 268 Pac. 37, *Federal Land Bank of Spokane v. McCloud,* 52 Ida. 694, 20 Pac. (2d) 201, and *Washburn-Wilson Seed Co. v. Alexie,* 54 Ida. 727, 35 Pac. (2d) 990, which hold that lessor and lessee in an annual crop-sharing rental lease are tenants in common and that in such case growing crops are a part of the realty and cannot be divided or apportioned. This court has held in the above cited cases that under such circumstances lessor and lessee are tenants in common in the crop. Such a rule is obviously necessary and just for the protection of land-

lords under crop leases. It does not follow, however, from this holding that the landlord's share of the crop may never be divided or apportioned. After all, his share is merely rent in kind and not in cash. At the time it is actually ready for delivery to the landlord, it has ceased to be a part of the realty and has become personal property, the title to the landlord's share being in the landlord and title to the tenant's share being in the tenant. The landlord's share is not rent for merely the day, week or month of its delivery, but is rental for the use of the land for the entire cropping year. The fact that it was not receivable and could not be delivered until after the harvest time, and after an execution sale was made, does not change its character as crop rent. It represents what the land owner is to receive for the year's use of the land and may readily be apportioned among successive owners or redemptioners. We do not think such a holding conflicts with section 8–310, I. C. A., relied on by respondent.

Appellant in this case was the owner and landlord from the commencement of the crop year until the 25th day of May, 1936. At that time she lost her title at an execution sale. That title passed to respondent who became the new landlord and to whom the tenant attorned. Now the statute says that the purchaser "is entitled to receive, from the tenant in possession, the rents of the property sold, or the value of the use and occupation thereof" *from the time of sale until redemption,* and of course if no redemption is made, continuously thereafter.

By the lease between the original landlord and tenant "the value of the use and occupation" of the premises for the cropping year was to be "one-third of the crop delivered in the warehouse at Genesee." Under this statute the purchaser was only entitled to receive "the value of the use and occupation" of the premises from the date of sale (May 25th) and not from the beginning of the year. For the same reason the original owner *was entitled* to the value for the use and occupation of the premises *up to the time she lost the title.*

For the purposes of our decision in this case, it makes no difference whether the landlord and tenant were tenants in

common of the crop, or simply lessor and lessee, with title to the crop in the lessee, or a monthly cash rental, and this, we think, is true for the reasons heretofore stated.

It follows from the foregoing that the court erred in sustaining the demurrer to the complaint. Judgment reversed and cause remanded. Costs awarded to appellant.

Holden, Budge and Givens, JJ., concur.

MORGAN, C. J., Dissenting.—Since *Eaves v. Sheppard*, 17 Ida. 268, 105 Pac. 407, 134 Am. St. 256, was overruled by *Devereaux Mtg. Co. v. Walker*, 46 Ida. 431, 268 Pac. 37, it has been the settled law in this state "that a co-ownership is created between the land owner and the grower in all crops grown by the latter while in possession of land under an agreement by which he covenants to deliver a portion of such crops to the owner of the land." The author of the latter opinion collected and cited a number of cases showing that to be the majority rule in this country.

Leasehold contracts, like the one involved in this case, construed in the light of *Devereaux Mtg. Co. v. Walker*, and subsequent Idaho decisions cited in the majority opinion herein, not only create the relationship of landlord and tenant between the parties thereto, but make them co-owners in the crop to be raised on the land leased by one to the other. The landlord's interest in the crop attaches, by virtue of the contract, at the time it is planted. It is a present, undivided interest, but he does not become entitled to possession until the crop has been harvested. However, it is an interest in the crop, not a right to recover the value of a share in it, which he is to receive in payment for the use and occupancy of his land by the tenant. It is settled law in Idaho that the tenant cannot sell the entire crop and thus defeat the landlord's right to his share of it. The landlord's interest is a present one—not prospective. His right of possession, only, is postponed until after harvest.

The complaint in this case, to which the demurrer was sustained, shows the foreclosure sale took place May 25, 1936, and respondent became the purchaser thereat and received a sheriff's certificate of sale for the mortgaged land. At that

time the wheat involved in this action was the landlord's part of a growing crop on the land.

I. C. A., sec. 8–310, is controlling. It provides:

"Upon a sale of real property the purchaser is substituted to, and acquires all the right, title, interest and claim of the judgment debtor thereto; and all his right, title, interest and claim thereto at any time during any subsisting lien thereon by attachment in the action, or by the docketing of the judgment. . . . . "

Section 54–101 is as follows:

"Real property or real estate consists of:

"1. Lands, possessory rights to land, ditch and water rights, and mining claims, both lode and placer.

"2. That which is affixed to land.

"3. That which is appurtenant to land."

Section 70–114 contains this provision:

"The following words have, in the compiled laws, the signification attached to them in this section, unless otherwise apparent from the context: . . . .

"2. The words 'real property' are coextensive with lands, tenements and hereditaments, possessory rights and claims."

From this it will be seen the words "real property," as used in sec. 8–310, are to be given the same meaning they had at common law.

It is not questioned that the overwhelming weight of authority in this country is to the effect that growing crops are real estate, subject to conveyance as such, and, in the absence of contract to the contrary, pass by deed from the owner of the land to the purchaser thereof; also that title to such crops passes to the purchaser of such land at judicial sale. The difficulty in this case arises from the fact that the land had been leased by its owner for crop rental, and our court has followed the Supreme Court of California in *Clarke v. Cobb*, 121 Cal. 595, 54 Pac. 74. The part of the California opinion which apparently is deemed to be controlling by the majority of this court is reflected in section 2 of the syllabus to that case:

"2. In the absence of appropriate words in a lease reserving part of the crop as rent, to indicate that the crops are

to be held in co-tenancy, the products to be delivered to the landlord after harvest will be deemed the property of the tenant until that time.''

The fallacy of that holding is at once apparent when we consider that, if it be true, the tenant might sell the landlord's share of the crop and give title to it to a third person. As heretofore pointed out, the Idaho cases are conclusively to the contrary.

Apparently, the California court was led into error by the concession referred to in the first paragraph of its opinion quoted from in this case. It is as follows:

''It is conceded by all parties that the merits of this litigation are dependent upon the construction to be given that portion of section 707 of the Code of Civil Procedure which provides: 'The purchaser, from the time of the sale until a redemption, and a redemptioner, from the time of his redemption until another redemption, is entitled to receive from the tenant in possession the rents of the property sold, or the value of the use and occupation thereof.' ''

It never should have been conceded that said section was controlling in that case, and I do not concede our sec. 8–407, which is its equivalent, is controlling in this case. That section has to do with rents, generally, and has nothing to do with fixing the ownership of growing crops.

The controlling sections in Idaho, are 54–101 and 70–114, which define real property as ''coextensive with lands, tenements and hereditaments, . . . . '' and sec. 8–310, which declares: ''Upon a sale of real property the purchaser is substituted to, and acquires all the right, title, interest and claim of the judgment debtor thereto.''

What was the right, title, interest and claim of appellant, the judgment debtor, in this case? It was the ownership of the mortgaged land, which included her undivided interest in the growing crop thereon. She acquired title to her interest in the crop when it was sown, and should be held to have lost it by foreclosure sale, subject to the right of redemption, before her right to possession of it accrued, because it was a growing crop on the mortgaged land and a part thereof when the land was sold.