[Sac. No. 5858.   In Bank.   Jan. 11, 1949.]

ANTONIO G. SILVEIRA et al., Appellants, v. HENRY T. OHM et al., Respondents.

George Wadsworth and John H. Machado for Appellants.

Rutherford, Jacobs, Cavalero & Dietrich, Philip Cavalero, William H. Woodward and Newton Rutherford for Respondents.

TRAYNOR, J.—On January 30, 1939, plaintiffs and defendants entered into a written agreement for the sale and lease of farm land. The agreement recited that defendants were the owners of 314.376 acres of land; that plaintiffs agreed to purchase 224 acres thereof designated as Parcels I and II and to lease an additional 86.376 acres described as Parcel III; and that defendants retained four acres. With respect to Parcel III the agreement provided that the "Sellers do hereby lease to Buyers and Buyers do hereby lease from Sellers for a period of five (5) years from and after October 24, 1938, Parcel III of said land owned by Sellers containing 86.376 acres. . . . In consideration of said Parcel III of said real property owned by the Sellers being hereby leased to the Buyers, the Buyers hereby agree that each year during the term of this lease, they will, at their own sole cost and expense properly prepare, plant, cultivate, irrigate and farm in a good and farmerlike manner all of said Parcel III of land to crops of beans and that they will use diligent efforts to bring to production the best crops reasonably obtainable upon the said land. As rental for the use of said Parcel III of land

pursuant to the lease thereof as herein set forth, when said crops are matured and ready for harvesting, Buyers will, at their own sole cost and expense harvest the same and deliver one-third (⅓) of the total crop of beans grown upon said premises to the Sellers. . . .'' The agreement also gave plaintiffs an option to purchase Parcel III at any time before the expiration of the lease at a total purchase price of $24,434.60.

Parcels I and II were conveyed to plaintiffs. They went into possession of Parcel III under the lease, and on July 27, 1943, elected to exercise the option. They deposited with a title company the full purchase price with instructions to pay that sum to defendants upon their delivery of a deed. Thereafter defendants served upon plaintiffs a ''Notice of Reservation of Rights,'' in which they expressed an intention to deliver the deed, but reserved their rights to rent from October 24, 1942, to October 23, 1943. Defendants then filed a deed with the title company with instructions to deliver it only if plaintiffs fulfilled certain conditions including the payment of brokerage fees. On August 17th, plaintiffs commenced an action for specific performance of the option provision. On the same day defendants modified their escrow instructions, eliminating therefrom all reference to brokerage fees, and permitted delivery of the deed to plaintiffs. Thereupon the title company recorded the deed from defendants to plaintiffs.

On February 20, 1946, defendants filed an answer and cross-complaint to the action for specific performance. In their cross-complaint they sought judgment for the reasonable value of one-third of the bean crop for the 1942-1943 crop year, or for the reasonable rental value of the premises during that period. After trial of the issues raised by the cross-complaint, the trial court rendered judgment in favor of defendants in the amount of $2,422.04, which it found to be the reasonable rental value for the use of the land from October 24, 1942, until July 27, 1943, the date on which the option was exercised. According to the memorandum opinion of the trial court this amount was computed as three-fourths of one-third of the selling price of the bean crop less recleaning expenses, which had been harvested in September or October of 1943. Plaintiffs appeal from this judgment.

Plaintiffs contend that this case is controlled by the general rule that in the absence of a reservation by the grantor of an interest therein growing crops remain part of the realty

and pass to the grantee under the deed. (*Huerstal* v. *Muir,* 64 Cal. 450, 453 [2 P. 33]; *Wilson* v. *White,* 161 Cal. 453, 460 [119 P. 895]; *Phillips* v. *Pacific Land & Cattle Co.,* 116 Cal.App. 290, 292-293 [2 P.2d 566]; *Downs* v. *National Bank,* 101 Cal.App. 712, 714 [282 P. 420]; *List* v. *Sandell,* 42 Cal. App.2d 505, 507 [109 P.2d 376].) This rule, however, governs the rights of a purchaser of realty only with respect to the title to growing crops. The present case does not involve the title to such crops. ▇ There was no reservation of an interest in the growing crops by defendants in the original agreement. Plaintiffs as lessees held the title to the crop, even though the delivery of a share of the crop constituted the agreed rent. (*Clarke and Cain* v. *Cobb,* 121 Cal. 595, · 597 [54 P. 74]; *Imperial Valley L. Co.* v. *Globe G. & M. Co.,* 187 Cal. 352, 354 [202 P. 129]; *Holt Manufacturing Co.* v. *Thornton,* 136 Cal. 232, 234 [68 P. 708]; *Hicks* v. *Butterworth,* 30 Cal.App. 562, 567 [159 P. 224]; *Clark* v. *Strohbeen,* 190 Iowa 989, 995 [181 N.W. 430, 13 A.L.R. 1419]; 1 Thompson on Real Property, 218.) Accordingly, defendants do not claim that they at any time held title to one-third of the crop.

▇ They seek instead to recover rent under the terms of the lease, which provides for the delivery of one-third of the crop as "rental for the use of Parcel III." Rent payable in crops is not due, however, until the crops are harvested or until a reasonable time after their maturity. (*Holden* v. *Gulstrom,* 89 Ore. 133, 139 [173 P. 672]; *Spencer* v. *Richardson,* 234 Ala. 323 [175 So. 278, 280]; *Crump* v. *Sadler,* 41 Okla. 26, 29 [136 P. 1102]; see cases collected in 126 A.L.R. 565, 578.) The basic question presented in this case, therefore, is whether plaintiffs are required to pay rent for that portion of the term during which they occupied the premises under the lease, although the rent did not become due until the crops were harvested.

▇ At common law rent was not regarded as accruing from day to day, but as becoming due on the day fixed for payment. Thus, it was generally held that rent could not be apportioned as to time (3 Tiffany on Real Property, 544; 1 Thompson on Real Property, 451), and that if the lessee acquired the reversion before the rent became due, the obligation to pay rent was extinguished. (3 Tiffany on Real Property, *supra,* 557.) This result follows, however, only in the absence of a statute providing for the apportionment of rent. (*Withington* v. *Nicols,* 187 Mass. 575, 577 [73 N.E. 855]; see *Matter of Eddy,* 10 Abb. (N.C.) (N.Y.) 396, 399.)

■   Section 1935 of the Civil Code requires the apportionment of rent if the lease terminates before the rent becomes due: "When the hiring of a thing is terminated before the time originally agreed upon, the hirer must pay the due proportion of the hire for such use as he has actually made of the thing, unless such use is merely nominal, and of no benefit to him." (See *Dieprenbrock* v. *Luiz*, 159 Cal. 716, 721-722 [115 P. 743, Ann.Cas. 1912C, 1084, L.R.A. 1915C 234].) It was settled in *Mott* v. *Cline*, 200 Cal. 434, 450 [253 P. 718], that this section requires the lessee to pay a proportionate amount of rent when the lease is terminated by the exercise of an option by the lessee to purchase the reversion. Section 1935 is therefore controlling unless it does not require the apportionment of rent payable in crops.

Since section 1935 provides that "the hirer must pay the due proportion of the hire for such use as he has actually made of the thing," it clearly contemplates payment by the lessee for the actual use of the premises. Its applicability does not depend on whether rent is payable in money or a share of the crops. "Rent is a compensation paid for the use of land. It need not be money. Any chattels or products of the soil serve the purpose equally as well. . . . The single difference differentiating [crop leases] from ordinary conventional leases is that the rent is to be paid in products of the soil, after harvest, rather than in money. But such difference is wholly immaterial, as changing the character and aspect of the instruments." (*Clarke and Cain* v. *Cobb*, 121 Cal. 595, 597 [54 P. 74]; see 1 Thompson on Real Property, *supra*, 435.)

There is no greater difficulty in apportioning rent payable in crops than in apportioning rent payable in money. The essential problem in either case is to determine the proportion of the agreed rent that the expired portion of the rental period bears to the entire period. It is true that the crops may never mature or may be destroyed without the fault of either party, or market conditions may render them of little value. These considerations, however, are relevant only to the problem of determining the amount of agreed rent for a particular period. It is not unusual for the parties to a lease to agree that the amount of rent shall be contingent upon a future event. (See 3 Tiffany on Real Property, *supra*, 546-547.) If the crops do not materialize and the lessee has not violated covenants and conditions of the lease, then by the terms of the agreement itself no rent is due. Once crops

have been harvested, however, as in the present case, the amount of rent agreed upon for the year's use of the land can be readily ascertained by determining the amount of the crops and computing the lessor's proportionate share according to the expired portion of the rental period, as in the case of rent payable in money.

A similar problem is involved in the decisions holding that rent payable in crops is apportionable under statutes providing for the apportionment of rent between a mortgagor and a purchaser at a foreclosure sale. (*Clarke and Cain* v. *Cobb, supra,* 121 Cal. 595, 598; *Shintaffer* v. *Bank of Italy,* 216 Cal. 243, 246 [13 P.2d 668]; *Ferguson* v. *Sullivan,* 58 Idaho 428, 434 [74 P.2d 183, 113 A.L.R. 1349]; *First Nat. Bank* v. *Maxey,* 34 Ariz. 438 [272 P. 641]; *Blodgett Loan Co.* v. *Hansen,* 86 Mont. 406, 413 [284 P. 140].) The mortgagor is entitled to a proportionate share of the crop rent, although his interest in the reversion passes to the purchaser at the foreclosure sale before the crops are harvested. In other words, the mortgagor is entitled to the rent that the property has earned in the period during which he held the reversion, although the amount of the crop rent reserved under the lease cannot be determined until after the harvest that may take place several months later. As stated in *Ferguson* v. *Sullivan, supra,* 58 Idaho 428, at 434, in apportioning crop rent to a mortgagor: "It does not follow . . . that the landlord's share of the crop may never be divided or apportioned. After all, his share is merely rent in kind and not in cash. . . . The landlord's share is not rent for merely the day, week or month of its delivery, but is rental for the use of the land for the entire cropping year. The fact that it was not receivable and could not be delivered until after the harvest time, and after an execution sale was made, does not change its character as crop rent. It represents what the landowner is to receive for the year's use of the land and may readily be apportioned among successive owners. . . ." The statutes involved in the foregoing decisions do not differ in purpose from section 1935 of the Civil Code, so far as apportionment is concerned, since both contemplate that the lessor receive the rent that has been earned during the period he has held the reversion. It follows that a similar rule applies in the apportionment of rent under section 1935.

Plaintiffs contend, however, that the provisions of the agreement render section 1935 inapplicable. They stress the

fact that the agreement itself specified that the parties intended to incorporate all their understandings and negotiations in a single instrument representing their entire agreement. They then urge that the parties carefully provided in the agreement the conditions precedent that were to be performed by the buyers and the amounts to be paid for the land and improvements, but that they failed to include a reservation by defendants of an interest in the crops, or any provision for the apportionment of crop rent or for the payment of rent in terms other than money, and that they necessarily had in mind the problem of the distribution of the crops, since they must have contemplated that the option was to be exercised at any time and that the leasehold interest would then merge in the reversion while the crops were growing. It follows, they contend, that in the absence of a reservation by defendants of an interest in the crops, the parties intended that all crops should pass to plaintiffs under the deed and that they had this result in mind in fixing the price for the land and improvements.

An examination of the entire agreement, however, discloses no provision relative to the question of apportionment. The lease contained the provisions usually found in a lease with an option to purchase. The fact that rent was made payable in crops with no reservation by defendants of an interest therein does not of itself indicate an intention to exclude apportionment. Under a lease with an option to purchase, where rent is payable in money, it could not be seriously contended that because the parties contemplated the exercise of the option at any time during the year and before the rent becomes due they thereby intended not to apportion rent. It is immaterial whether the rent is payable in money or in crops. If the agreement is silent on the question of apportionment, section 1935 is controlling as if it were expressly included in the terms of the agreement itself. (*Lelande* v. *Lowery,* 26 Cal.2d 224, 226 [157 P.2d 639, 175 A.L.R. 1109] ; *Chapman* v. *Jocelyn,* 182 Cal. 294, 297 [187 P. 962] ; *Hub Hdw. Co.* v. *Aetna Acc. Etc. Co.,* 178 Cal. 264, 267 [173 P. 81] ; *Mary Len Mine* v. *Industrial Acc. Com.,* 64 Cal.App.2d 153, 159 [148 P.2d 106].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.