[Civ. No. 4618.   Fourth Dist.   Apr. 8, 1953.]

A. E. WRIGHT, Appellant, v. BARNEY CORNETT
POTATOES, INC. (a Corporation), Respondent.

Kendall & Howell for Appellant.

Deadrich, Gill & Bates for Respondent.

BARNARD, P. J.—The plaintiff has appealed from a judgment dismissing the action as against the corporate defendant.

The appellant entered into an agreement dated August 2, 1948, by which he agreed to lease 160 acres of land in Kern County to H. J. Hiett for the term of five years.  The agreement is in the form of a letter written by Wright to Hiett, with an acceptance signed by Hiett.  The letter referred to a conversation in which Hiett had told Wright that this land could be leveled and a water well developed, thereby turning

it into a farm on which crops could be raised. Wright then stated that farming was not his business; that his time was fully taken up in his own line of endeavor; that he did not know whether the land could be leveled or whether water could be developed; that he was not willing to gamble money on the possibility that this could be done; and that if Hiett was willing to gamble on these conditions he would prefer to loan Hiett the money to carry on the work, and take Hiett's note for all monies thus loaned. He then stated the terms under which he would lease the property. So far as material here, these terms were as follows:

1. "That you will pay undersigned the one fifth part of the gross of all crops so raised, until all the notes are paid including the interest thereon."

2. "I would require a yearly rental of the land as such, of $2.00 per acre which you are to pay regardless of production, because you may fail to produce anything, however if you are successful in raising a crop the rental will be included in the said one fifth, thus the one fifth would first pay the lease rental, next the accumulated interest and the balance would apply on the principal."

3. "In event the earnings by crops on the land are sufficient, that the said one fifth gross will have paid all the notes for the money so loaned before the termination of the lease, you will continue to pay to undersigned the same one fifth ratio of production."

The plaintiff brought this action in conversion against Barney Cornett Potatoes, Inc., a corporation, and H. J. Hiett. The original complaint alleged the making of the agreement, which was attached thereto and incorporated therein by reference; that Hiett raised a crop of potatoes on this land which was harvested in June and July, 1949; that the respondent corporation sold this crop subsequent to its harvest; that the respondent should have known of the agreement between the appellant and Hiett; that the gross value of the crop exceeded $30,000; that $2,224.91 had been paid the appellant by the respondent; that the remainder of appellant's share in said crop was converted to its own use by the respondent; and that the value of this remainder is $3,775.00.

An amended complaint was filed, the only change being to allege that the gross value of the crop was $54,044; that $6,046.74 had been paid the appellant by the respondent; and that the value of the remainder of appellant's share in said crop is $4,762. A copy of the letter agreement was attached

to, and made a part of, the amended complaint by reference. The respondent's demurrer to the amended complaint was sustained with leave to amend.

A second amended complaint was then filed, the only material change being to omit the copy of the lease agreement and in lieu thereof to allege "that one of the clauses of the said agreement provided that the plaintiff was to receive one fifth of the crops planted and harvested on said land." The respondent's demurrer to the second amended complaint was sustained without leave to amend, and this appeal followed a judgment of dismissal as to the corporate defendant.

The appellant contends that under the terms of the agreement he had a fixed interest in a specific share of the crop, and that under facts very similar to those here involved it was so held in *Woodsend* v. *Chatom,* 191 Cal. 72 [214 P. 965]. It is further argued that, in any event, the language of the agreement is ambiguous and that the court should have permitted him to again amend and should have heard the case on its merits, taking evidence as to what was meant by the parties to the agreement.

The controlling question here is whether the appellant merely had a money claim or whether he and Hiett were in the position of cotenants in the crops to be raised. Under the circumstances here appearing, the letter agreement is properly to be considered notwithstanding the fact that the last amended complaint did not set forth the agreement in full. (*Uchida Inv. Co.* v. *Inagaki,* 108 Cal.App.2d 647 [239 P.2d 644]; *Lee* v. *Hensley,* 103 Cal.App.2d 697 [230 P.2d 159].) In *Clarke* v. *Cobb,* 121 Cal. 595 [54 P. 74], the court pointed out that where the relationship of landlord and tenant exists the parties may also be cotenants in the crops to be raised where the agreement contains apt words to disclose such a status. The court there said:

"When it is established that a certain contract is a lease, and that the relation of landlord and tenant exists between the parties, there must be some appropriate words in the contract to indicate that the crops raised on the lands are to be held in cotenancy or such will not be the conclusion reached. If there is nothing in the language to indicate that intention, then the products to be delivered to the landlord after harvest, by the tenant, will be deemed the property of the tenant until that time, and treated as rent to be then paid."

In *Woodsend* v. *Chatom,* 191 Cal. 72 [214 P. 965], relied on by the appellant, the court recognized the rule followed in

*Clarke* v. *Cobb, supra,* but held that the facts in that case were sufficient to show the existence of a cotenancy in the crops raised. The court pointed out that in the case before it the landlord "was to do more than merely receive a stipulated part of the crops as rent." In that case the agreement provided that the landlord was to furnish the seed for the first year, and half of the seed thereafter; that he was to furnish a large amount of tools and equipment; that he was to pay half the cost of maintaining the pumps; that he and the tenant were each to purchase a half interest in a number of pigs and calves; that they were to mutually agree on what crops should be planted; that they were equally interested in chickens, turkeys and fowls to be raised; and that they had agreed that the "ranch shall be run on 50 per cent basis to each party." The facts in that case, which the court held sufficient to show a cotenancy in the crops, were radically different from those in the case now before us, where the appellant specifically disavowed any intention of having anything to do with the actual operation of the farm, required notes for the money loaned to enable Hiett to operate the farm, provided for a cash rental until the notes were paid, and quite definitely provided that a share of the gross receipts or earnings from the crops should be applied in payment of the notes and of the rent. There was nothing in the agreement which in any way indicates any provision for a specific division of the crops to be produced, or the actual turning over to the appellant of a specified portion of such a crop.

The first clause of the agreement which we have quoted provides that Hiett is to pay the appellant "the one fifth part of the gross of all crops so raised until all the notes are paid." The use of the words "pay" and "gross" clearly indicate an intention for payment in money rather than a specific division of the crops in kind. The second clause we have quoted requires the payment of a rental in money, regardless of production, and then provides that the one fifth would first pay the rental, then the interest, and the balance would apply on the principal. This also strongly indicates an intention to provide for a money payment and not for a specific division of the crops. The third clause we have quoted refers to the "earnings" from the crops and provides that after one fifth of the gross has "paid" all the notes Hiett will continue to pay to the appellant "the same one fifth ratio of production." This one fifth ratio refers to the one mentioned in the first clause we have quoted, and it cannot be held to be

sufficient to constitute "appropriate words in the contract to indicate that the crops raised on the lands are to be held in cotenancy." (*Clarke* v. *Cobb, supra.*)

Not only do we think no ambiguity appears in the agreement which could be cured by oral evidence, without changing the intention of the parties as expressed in the written agreement, but the appellant had twice before amended the complaint without stating a cause of action against this respondent, and no abuse of discretion appears in refusing a further permission to amend. At no time was it alleged that the notes had been paid, and until that time only a cash rent was due. The record also discloses that the respondent was a potato broker, that it held a mortgage on this crop of potatoes, and that it sold the potatoes to a buyer in its normal course of business.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.