[Civ. No. 5541.   Third Appellate District.—July 16, 1936.]

FRANK COX, Respondent, v. L. F. MILLER, Defendant; HERSHEL CALIFORNIA FRUIT PRODUCTS CO. (a Corporation), Appellant.

Levinsky & Jones and James C. Nichols for Appellant.

Griffin & Boone and Edward T. Taylor for Respondent.

BRUTON, J., *pro tem.*—On November 27, 1929, Frank Cox, the respondent here, leased to L. F. Miller approximately 300 acres of land for the ensuing crop year. In this lease Miller covenanted to pay to respondent as rent, the sum of $7,500, to be paid in two instalments, $4,500 on the execution of the lease, which was paid in due course, and $3,000 on or before September 1, 1930. It was also agreed in the lease that Miller should pay all tolls of water used by him on the leased premises, and reasonable attorneys' fees in the event of a suit.

Appended to this lease, and as a part thereof, was a written instrument executed by the Hershel California Fruit Products Co., the appellant here, guaranteeing the payment of all moneys agreed to be paid under the lease. There was an agreement between Miller and appellant, not involved here, concerning the growing and marketing of the tomato crop to be grown on the leased premises. In the forepart of August, 1930, appellant having become dissatisfied with the crop prospects, decided to take its loss and retire from the deal. However, after discussing the matter with respondent, the following written agreement was entered into and signed by appellant and respondent:

"August 6, 1930.
"Mr. Frank Cox,
　"Westly, Calif.
"Dear Sir: ·
　"This confirms our verbal conversation of August 5th for the consideration of further advances to be made of Leslie

F. Miller for payments of labor on the land contracted with you the 27th day of November, 1929, whereas there is $3000.00 due you on or before September 1st. To convenience the farming of your land you have agreed to only hold us responsible for $2000.00 instead of $3000.00, and payments on the above $2000.00 should be made on or about September 15th at which time we will be entirely released of any obligation on the contract between you and Leslie F. Miller dated November 27th, 1929. The money to be advanced to Miller may be advanced from time to time as the Hershel Company see fit.

"Yours very truly,

"HERSHEL CAL. FRUIT PRODUCTS CO., INC.

"By A. HERSHEL, Pres.

"AH:ER

"Accepted by:

"FRANK COX."

The payments referred to in the instrument above set out were made in due course. However, the water tolls amounting to $1975 agreed to be paid by Miller and guaranteed by appellant in the lease, were not paid, and to prevent them from becoming a lien on the land, were paid by respondent. Respondent brought a suit against Miller and appellant, and recovered for the water tolls of $1975, which issue is embraced in the first cause of action of respondent's complaint. Judgment on the second cause of action, which embraced the same issues as the first, was for the defendants.

Respondent's third cause of action relates to an entirely different transaction. In the early part of 1930, at the beginning of the cropping year, Miller and respondent entered into an oral agreement, whereby Miller was to plant fifty acres of pumpkins on respondent's land,—not, however, the land referred to above,—and respondent was to have one-third of the crop as rent, of which respondent was to retain title. This arrangement was discussed in the presence of, and with Mr. Hershel acting for appellant, which later entered into a standard marketing agreement with Miller concerning the pumpkin crop. It was agreed between appellant and respondent that respondent's share of the crop was to be purchased by appellant at $15 per ton, to be delivered in the field. The crop was duly harvested, and respondent's share came to $1430. However, when the time for set-

tlement arrived, Miller was heavily indebted to appellant for other matters, and appellant credited Miller's account with the entire proceeds of the pumpkin crop, and paid respondent nothing. Respondent sued and recovered for the water tolls above referred to for attorneys' fees and for the agreed value of his share of the pumpkin crop.

There are but two questions presented here. They are, First: Did appellant's payment of all moneys to be paid by the agreement of August 6, 1930, constitute a complete discharge of all its obligations under the written lease of November 27, 1929, between Miller and respondent?

Second: Was the parol agreement concerning the fifty acres of pumpkins such that the title to the entire crop was in Miller, and therefore subject to the equities existing between Miller and the Hershel company at the time of settlement?

A third point was raised by appellant, that the acceptance by respondent of the check of appellant in payment of the $2,000 referred to in the agreement of August 6, 1930, constituted an accord and satisfaction. This is not discussed, as our decision on the first question renders it moot.

The trial court admitted parol evidence of the negotiations leading up to the signing of the August 6th agreement in explanation thereof, and found that said agreement only related to rent and did not in anywise release appellant from any of the other obligations of the lease. It being conceded that the appellant fully performed under the agreement of August 6, 1930, what was meant by the words, "at which time we will be *entirely released from any obligation* on the contract between you and Leslie F. Miller, dated November 27, 1929". This language we believe is clear. While it is true that no specific mention is made of water tolls, yet the instrument contains all the elements of a binding contract. The Hershel company was to make further advances to Miller "to convenience the farming of your (Cox) land", and to pay the reduced rent of $2,000 on or before September 15, 1930, in consideration of which Cox was to reduce the rent instalment from $3,000 to $2,000 and "entirely release" the Hershel company "from any obligation" under the lease. The language used meant either that, appellant was to be released from all obligations under the lease upon performance, or it meant absolutely nothing. Respondent's con-

tention that it was merely a speculation that at the time of performance appellant would have paid the water tolls, is without merit. To adopt such a construction would be to deprive the language of all contractual meaning.

The trial court erred in admitting parol evidence to explain the unambiguous terms of a written contract. (Secs. 1638 and 1639, Civ. Code.)

"Where the terms of an agreement are set forth in writing and the words are not equivocal or ambiguous, the writing or writings will constitute the contract of the parties, and one party is not permitted to escape from its obligations by showing that he did not intend to do what his words bound him to do." (*Brant* v. *California Dairies, Inc.,* 4 Cal. (2d) 128 [48 Pac. (2d) 13].)

The trial court found that by the parol agreement concerning the pumpkin transaction, respondent reserved title to one-third of the crop, and that appellant received actual notice thereof. While the court does not expressly so find, it appears that such notice was received by appellant prior to the planting of the crop by Miller. Without reviewing the evidence, it is sufficient to state that though conflicting, it amply sustains the findings. Appellant's contention in this regard, other than as to the sufficiency of the evidence, is that as a matter of law the parol agreement was not a cropping contract, but was a lease creating the relationship of landlord and tenant, and that the one-third share due respondent was the property of Miller until delivery to respondent, the landlord, and was, therefore, subject to the equities existing between Miller and the appellant; that appellant was only bound to pay to the respondent the balance, to the extent of his interest, after deducting all moneys due from Miller to the appellant. Though not material, the parol agreement was undoubtedly a lease. It is true, as laid down in the case of *Clarke* v. *Cobb,* 121 Cal. 595 [54 Pac. 74], that where the relationship of landlord and tenant exists, and where the rent is to be paid by a share of the crop grown on the demised lands, and where there is no agreement to the contrary, the title to the crop is in the tenant and he is not a tenant in common in the crop with his landlord. It is equally true, as indicated in *Clarke* v. *Cobb, supra,* and as expressly decided in *Woodsend* v. *Chatom,* 191 Cal. 72 [214 Pac. 965], that the landlord may, by express

agreement, reserve title to his rental share of the crop, and such an agreement is binding as between the parties, and upon all others having notice thereof. The trial court found such an agreement reserving title, which finding is binding upon this court, and further found that the appellant had actual notice thereof.

It follows that the judgment was rightfully had by the respondent against the appellant for the agreed price of the one-third of the pumpkin crop.

The judgment as to defendant, Hershel California Fruit Products Co., a corporation, is reversed as to plaintiff's first cause of action, and affirmed as to plaintiff's third cause of action.

The trial court will enter findings and judgment in accordance herewith.

Pullen, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 15, 1936.