**IMPORTED LIQUORS CO. v. LOS ANGELES LIQUOR CO., Inc.**

**No. 11057.**

Circuit Court of Appeals, Ninth Circuit.

Dec. 28, 1945.

Rehearing Denied Jan. 29, 1946.

Ezra Z. Shapiro and S. K. Walzer, both of Cleveland, Ohio, and Benjamin, Lieberman & Elmore, of Los Angeles, Cal., for appellant.

Behrstock & Rudnick, of Los Angeles, Cal., for appellee.

Before GARRECHT, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Appellant, a partnership consisting of Howard S. Bernon and Ruth B. Bernon, citizens of Ohio, brought this action against appellee, a California corporation, on September 22, 1944. Appellee answered on October 26, 1944. On November 27, 1944, appellant served upon appellee interrogatories to be answered by an officer thereof competent to testify in its behalf.[1] The interrogatories were answered by appellee's president, Aaron Lilien, on December 8, 1944.[2] A deposition of Howard S. Bernon was taken by appellant on December 19, 1944.[3] On January 12, 1945, appellee moved for a summary judgment in its favor and, in support of its motion, filed affidavits of Lilien, Irven Rose and M. D. Weiner. On February 9, 1945, appellant moved for a summary judgment in its fa-

---

[1] See Rule 33 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

[2] The answers to the interrogatories were filed on January 15, 1945.

[3] The deposition was filed on January 13, 1945.

vor and, in support of its motion, filed an affidavit of Howard S. Bernon. In opposition to appellant's motion, appellee filed an affidavit of Lilien on February 15, 1945. In support of appellant's motion and in opposition to appellee's motion, appellant filed an affidavit of Joseph Sachs on February 19, 1945. The court denied appellant's motion, granted appellee's motion and entered judgment in appellee's favor.[4] From that judgment this appeal is prosecuted.

The motions were made pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides:

"(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the pleading in answer thereto has been served, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.

"(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

"(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time specified for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In this case, there were no pleadings except the complaint and the answer thereto, no depositions except that of Bernon, no admissions except those contained in the pleadings, the answers to interrogatories, the deposition and the affidavits, and no affidavits except those of Lilien, Rose, Weiner, Bernon and Sachs.

The complaint alleged: "On June 12, 1944, the defendant [appellee], by its noncancelable order, agreed in writing to purchase from the plaintiff [appellant] and, by its acceptance of said order,[5] the plaintiff sold to the defendant 1,400 cases of Portuguese Suarez brandy, upon the following terms: Shipment to be made F.O. B. Atlantic port, the defendant to pay for said merchandise upon draft, attached to the bills of lading, at the purchase price of $41.55 per case, less reserve for internal revenue taxes and customs duty, at the rate of $27.63 per case, payable by the defendant, or at a net purchase price of $13.92 per case. As further consideration in and for said agreement[6] of purchase and sale, the defendant issued and delivered to the plaintiff its check in the sum of $1,400 as a deposit thereunder."

The complaint further alleged that on June 14, 1944, appellant received a telegram from appellee whereby appellee sought to cancel "the aforesaid agreement;"[7] that appellant forthwith advised appellee that appellant would not accept or consent to such cancelation; that payment of the check was stopped by appellee and was refused by the drawee thereof; that appellant made the brandy available, segregated and stored it in a public warehouse under warehouse receipts, was at all times ready, willing and able to arrange for the shipment thereof to appellee, or to deliver to appellee the warehouse receipts, duly endorsed and signed, and to perform its obligations under "the aforesaid agreement," and so notified appellee; but that appellee failed and refused to perform its obligations under "said agreement."

The complaint further alleged that, in the warehousing, storing and handling of the brandy for appellee, appellant incurred expenses amounting to 6 cents a case for the first month and 2½ cents a case for each month thereafter, and that, at the time the complaint was filed, the reasonable market value of the brandy was $5 a case. Thus, according to the complaint, the 1,400 cases for which appellee agreed to pay appellant $19,488 ($13.92 a case) had, at the time the complaint was filed, a reasonable

---

[4] The judgment was that appellant take nothing, and that appellee recover its costs.

[5] Meaning, obviously the order of June 12, 1944. No other order was mentioned or referred to in the complaint.

[6] Meaning, obviously, the agreement which, according to the complaint, was made by the order of June 12, 1944. No other agreement was mentioned or referred to in the complaint.

[7] See footnote 6.

market value of $7,000—$12,488 less than the agreed price.

The complaint prayed that appellant have judgment requiring appellee to perform "its aforesaid agreement" and, upon delivery by appellant to appellee of warehouse certificates covering the brandy, to pay appellant $19,488, plus expenses, interest and costs, or that appellant have judgment for damages in the sum of $12,488, plus expenses, interest and costs.

The answer to the complaint denied the quoted allegations thereof and alleged that "defendant [appellee] never executed any non-cancelable order;" that "plaintiff [appellant] never accepted any order executed by defendant;" that "no agreement was ever entered into between the plaintiff and defendant;" that "defendant did make an offer to purchase certain brandy from plaintiff and mailed a check in the sum of $1,400 to the plaintiff, together with said offer;" and that "on June 14, 1944, defendant canceled the offer above mentioned and stopped payment on the aforesaid check of $1,400."

Copies of the order mentioned in the complaint were attached to the interrogatories, the deposition, Rose's affidavit and Weiner's affidavit. The order consisted of a letter from appellee to appellant dated June 12, 1944, reading as follows: "This will be your authority to ship 1,400 cases Suarez brandy at $41.55 per case F.O.B. Atlantic port, draft attached to bill of lading less $1 per case deposit which is herein enclosed ($1,400) less internal revenue taxes, duties and the additional Federal tax. Goods to be shipped in bond in care of the Frank P. Dow Co., 354 Spring St., Los Angeles. California. Please furnish the Frank P. Dow Co. your Federal import license number in the event they may require it and also please mail them the bill of lading and oblige."

Copies of the check mentioned in the complaint were attached to the interrogatories and the deposition. The check was dated June 12, 1944, was drawn on the Bank of America National Trust and Savings Association, was payable to appellant, and bore on its face the following notation: "Deposit on 1,400 cases Suarez brandy."

Copies of the telegram mentioned in the complaint were attached to the interrogatories, the deposition and Lilien's affidavit filed January 12, 1945. The telegram was dated June 14, 1944, was addressed to appellant, was signed by Lilien on behalf of appellee, and was as follows: "Irven Rose who placed order with you for 1,400 cases Suarez brandy [8] sold his interest in Los Angeles Liquor Company [appellee] no longer with us please cancel order and return deposit check and oblige confirm."

The answers to interrogatories stated that on June 12, 1944, Rose was appellee's secretary and was authorized to sign the order and check above described.[9] Thereby it was, in effect, admitted that appellee signed the order and check.

The deposition and affidavits showed the following facts, all of which were undisputed: The order and check were mailed to appellant on June 12, 1944, and were received by appellant on June 14, 1944. Thereafter, on June 14, 1944, appellant received the telegram.[10] Appellant never accepted the order. It did not acknowledge receipt of the order until June 29, 1944.[11]

[8] The order and check hereinabove described were signed by Rose on behalf of appellee.

[9] See footnote 8.

[10] The deposition showed that the order and check were received about three hours before the telegram.

[11] The deposition showed that on June 29, 1944, appellant wrote appellee as follows: "We were, indeed, surprised to receive your telegram dated June 14, attempting to cancel your order for 1,400 cases Suarez brandy, on the ground 'hat Mr. Irven Rose 'sold his interest in Los Angeles Liquor Company.' We were all the more surprised this morning to receive returned to us unpaid your $1,400 check, dated June 12, and marked 'Payment Stopped.' This order was placed by your company in good faith and was taken by us in good faith. * * * Under these circumstances, we suggest that you send us by air mail a new check for $1,400 and we will return your June 12th check, which has been marked 'Payment Stopped.' We will then promptly ship the merchandise to you against sight draft as agreed upon. Unless we receive your favorable reply by return air mail, we shall, of course, be compelled to turn the file over to our attorneys, with instructions to file suit against your company for the full amount due for the 1,400 cases of brandy, which you purchased from us. We do not usually force our customers to buy merchandise from us, but we do feel that one should live up to his contract, and we intend to see to it that your company does, in this instance."

It never shipped the brandy. Payment of the check was stopped by appellee on June 14, 1944.

The complaint called the order a "non-cancelable" one and stated that appellee thereby "agreed" to purchase the brandy mentioned therein. These were not allegations of fact, but were mere expressions of legal conclusions. The conclusions were unwarranted, for the order was a mere offer to purchase. Not having been accepted, it could be and was canceled and revoked by the telegram of June 14, 1944. Hence no agreement resulted therefrom.[12]

Appellant contends that the deposition and Bernon's affidavit showed that appellant and appellee made an agreement for the purchase and sale of 1,400 cases of brandy prior to June 12, 1944. Whether they did or not is immaterial, for this action was not based on any agreement made prior to June 12, 1944, but was based on the order hereinabove described—the order of June 12, 1944. No prior agreement was mentioned or referred to in the complaint.

We conclude, as did the court below, that the pleadings, the answers to interrogatories, the deposition and the affidavits showed that there was no genuine issue as to any material fact, and that appellee was entitled to judgment as a matter of law.

Judgment affirmed.

---

[12] 55 C.J., Sales, §§ 43–53, pp. 78–88; 46 Am.Jur., Sales, §§ 45–47, pp. 234–238.