Warren A. OTT, and Mortgage Services of Norfolk, Inc., a Corporation, Appellants,

v.

HOME SAVINGS & LOAN ASSOCIA-TION, a Corporation, Appellee.

No. 15804.

United States Court of Appeals
Ninth Circuit.

Oct. 20, 1958.

Hindin & Susman, Los Angeles, Cal., Edwin J. Regan, Weaverville, Cal., Maurice J. Hindin, Los Angeles, Cal., for appellants.

Paul Fitting, Los Angeles, Cal., for appellee.

Before STEPHENS, Chief Judge, and FEE and BARNES, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This action involves the construction of an instrument wholly in writing. The trial court in effect held that an offer in writing by Home Savings & Loan Association, hereinafter called "Home," to purchase from Harold L. Shaw or his nominee up to seven and one-half million dollars worth of permanent real estate loans could not be accepted by a stranger not purporting to act as a representative of Harold L. Shaw, but as his assignee. The decision of the trial court is correct and is affirmed.

The pertinent documents, which were exhibits to the amended complaint, are as follows:

"Home Savings and Loan Association "Main Office: 800 South Spring Street, "Los Angeles 14, California TRinity 7991

December 31, 1953

"Mr. Harold L. Shaw
"650 South Spring Street
"Los Angeles 14, California
"Dear Mr. Shaw:

"This letter is to serve as a binding commitment, for a period of three years from date hereof, upon Home Savings and Loan Association to make to you or your nominee the following loans:

"(1) Two and One Half Million Dollars ($2,500,000) in permanent real estate loans to be guaranteed under the provisions of the Servicemen's Readjustment Act of 1944, as amended. Said loans shall have a maturity date of twenty nine years and call for no down payment, and Home shall not make any service charge therefor, but shall be entitled to the One Per Cent (1%) charge to be collected from the Veteran purchaser.

"(2) In addition to the above, Home agrees to purchase from you or your nominee up to Seven and One Half Million Dollars ($7,500,-000) of permanent real estate loans to be guaranteed under the provisions of the Servicemen's Readjustment Act of 1944, as amended. Said loans shall have a maturity date of twenty nine years. The purchase price of said loans to be at par

less Seven and One Half Per Cent (7½%) thereof.

"Yours very truly,
"Home Savings and
Loan Association
"Howard F. Ahmanson
"President"

"Designation of Nominee and Assignment of Commitment

"For and In Consideration of Ten ($10.00) Dollars and other good and valuable consideration, I, the undersigned Harold L. Shaw, herewith designate and appoint Mortgage Services of Norfolk, Inc., and Warren A. Ott, of Norfolk, Virginia, as my Nominee under that certain commitment executed December 31, 1953, by Home Savings & Loan Association, by Howard Ahmanson, President, to the undersigned, a copy of which said loan commitment is attached hereto.

"I, the undersigned Harold L. Shaw, herewith assign, set over and transfer unto Mortgage Services of Norfolk, Inc., and Warren A. Ott, as my nominee, all of my right, title and interest in and to the aforesaid commitment and all of my rights thereunder.

"Dated:

10th day of November, 1956.
"/s/ Harold L. Shaw

"Foregoing Assignment Is Accepted:

"Dated: November 15, 1956

"Mortgage Services of Norfolk, Inc.
"By /s/ Warren A. Ott, President
"/s/ Warren A. Ott"

"Mortgage Services of Norfolk, Inc.
"Granby at Olney Road, Norfolk 10, Virginia

"Warren A. Ott          Telephone
"President          Madison 7-5601
"December 20, 1956

"Home Savings & Loan Association
"9245 Wilshire Boulevard
"Beverly Hills, California
"Attention: Mr. Kenneth D. Childs
"Gentlemen:

"This will serve to advise you that Mortgage Services of Norfolk, Inc., and Warren A. Ott of Norfolk, Virginia, have been designated as nominee by Mr. Harold L. Shaw under the commitment dated December 31, 1953, executed by Home Savings & Loan Association to Mr. Harold L. Shaw, and we are pleased to advise you that we hold an assignment from Mr. Shaw of all of his rights as his nominee under the aforesaid commitment of Home Savings & Loan Association.

"We herewith accept the offer and commitment of Home Savings & Loan Association of December 31, 1953, to purchase loans described in Paragraph (2) of the said commitment in the total aggregate amount of $7,500,000.00, to be purchased by Home Savings & Loan Association, at par less 7.5% thereof.

"Pursuant to Paragraph (2) of the commitment of December 31, 1953, executed by Home Savings & Loan Association by Mr. Howard Ahmanson, as President, to Mr. Harold L. Shaw, we are pleased to formally tender to you $7,500,000.00 worth of permanent real estate loans guaranteed under provisions of the Servicemen's Readjustment Act of 1944, as Amended, and as specified in the said commitment.

"We are ready, able and willing to make immediate delivery of these loans to Home Savings & Loan Association, and we request immediate delivery instructions as to place of delivery of the said loans and payment procedure.

"Since physical delivery of all of these loans represents a heavy mechanical burden, to facilitate completion of transfer of the loans we are pleased to hand you herewith original loan documents and supporting documents in the sum aggregating $96,070.11 for which we will be pleased to accept your trust receipt for payment.

"The remainder of the loans, to aggregate a total of $7,500,000.00,

is likewise available for immediate delivery to you, for which we request immediate delivery instructions and payment procedure.

"Very truly yours,
"Mortgage Services of
Norfolk, Inc.
"By /s/ Warren A. Ott
"President.
"/s/ Warren A. Ott"

The amended complaint alleges that Ott and Mortgage Services had fully performed all the terms and conditions of the "agreement in writing" and "have been and were ready, able and willing" at all times mentioned to perform. It was set up that Home refused to purchase the real estate loans described and continued the refusal at all times since December 20, 1956. It was also alleged that Ott and Mortgage Services notified Home of the alleged nomination and assignment on or about December 5, 1956, and between that date and January 8, 1957, Home recognized, acknowledged and dealt with Ott and Mortgage Services as the assignee of Harold L. Shaw, and, in reliance thereon, Ott and Mortgage Services changed their position to their detriment and damage. It is claimed that Ott and Mortgage Services have been damaged in the sum of $237,135.80.

The trial court sustained a motion to dismiss the amended complaint "on the grounds that such Amended Complaint failed to state a claim upon which relief could be granted and failed to join an indispensable party in that Plaintiffs purported to act and to sue as assignees of a written agreement which was not assignable and hence had no rights in the alleged written agreement on which the action was based, in that Plaintiffs were not the real parties in interest and the real party in interest had not acted or sued under the alleged agreement, and in that a waiver or estoppel was not and could not be pleaded as against Defendant."

■ At the outset, a question arises as to the nature of the instrument dated December 31, 1953, in the form of a letter from Home to Shaw.[1] Throughout the complaint it is characterized as an "agreement," which is, of course, merely a legal conclusion which may be unwarranted.[2] The instrument itself does not purport to be a contract or an agreement between Home and Shaw. The signature or affirmance of Shaw does not appear, consideration is not recited, nor is the instrument an engagement under seal. Upon its face, the letter appears to be an offer by Home to Shaw for a unilateral contract which by its terms is to remain open three years. Also pleaded in the complaint is the letter of Ott to Home dated December 20, 1956, whereby Ott and Mortgage Services purport to "accept the offer and commitment of Home." Of course, this letter of Ott could not serve as an acceptance of the offer for the unilateral contract made to Shaw. The only one able to accept such an offer would be the offeree, who would accept by the performance of the act sought, in this case the tender of the guaranteed real estate loans. While such tender might be made by letter, it could not be made by someone other than Shaw. Indeed, it is hornbook law even in the realm of bilateral contracts that a revocable offer cannot be accepted by anyone other than the offeree.[3] And the

---

1. "* * * where the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom." Foshee v. Daoust Construction Co., 7 Cir., 185 F.2d 23, 25. Rule 10(c), Federal Rules of Civil Procedure, 28 U.S.C.A.

2. See Imported Liquors Co. v. Los Angeles Liquor Co., 9 Cir., 152 F.2d 549, 552; Simmons v. Peavy-Welsh Lumber Co., 5 Cir., 113 F.2d 812.

3. "A revocable offer can be accepted only by or for the benefit of the person to whom it is made." Restatement, Contracts, § 54 (1932). "* * * an offer made to one person cannot be accepted by another, even though the offeree purports to assign it." 1 Williston, Contracts, § 80, pages 231–232 (Rev.Ed., 1936); 1 Corbin, Contracts, § 56 (1950).

offeree, in whom the power of acceptance lies by virtue of the offer, has no assignable rights.

■ However, this case is not decided upon this ground. It may be that facts omitted from the pleadings might be developed to indicate that the terms of the letter of December 31, 1953, did constitute the terms of a valid contract between Home and Shaw. If that assumption be true, still the trial court was correct in finding that the rights of Shaw thereunder were, by the terms of the document, not assignable.[4] Thus it is assumed, arguendo, that the letter constituted an agreement and enforceable contract between Home and Shaw.

The written document is plain upon its face. There is no uncertainty or ambiguity in the language. The words constitute an offer of a commitment to one individual, Harold L. Shaw, alone. If more had been intended, the words "and his assigns" could have been inserted. But here a clause of severe limitation expressed the intention of the maker. There might have been a possible doubt if this phrase had been omitted. But, when the expression "or your nominee" was included, the intention to confine the benefit of the obligation to Shaw alone was patent. This formula excluded all other persons but Shaw. The general rule that contracts are assignable does not have any effect upon the specific document which is here construed.

There is no doubt as to the sense in which the words "or your nominee" are used. The taking of title by a nominee of a principal or the conveyance of title by a nominee is a familiar device in stock transactions or in the transfer of other interests represented by documents. We cannot do better than to quote the language of a California decision which, while not entirely apposite upon the facts here, does give a definition of "nominee" which is exact for our purposes:

> "The word 'nominee' in its commonly accepted meaning connotes the delegation of authority to the nominee in a representative or nominal capacity only, and does not connote the transfer or assignment to the nominee of any property in or ownership of the rights of the person nominating him." Cisco v. Van Lew, 60 Cal.App.2d 575, 583–584, 141 P.2d 433, 438.[5]

The purpose of the document in question here was to offer an obligation to Harold L. Shaw alone and not to his nominee or to any other person whomsoever.

■■ Contrary to the arguments advanced by appellants, Home clearly thus stated the intent to tender an obligation to Shaw and no one else. The terms of the written instrument were not ambiguous. No custom could vary this interpretation.[6] No parol evidence to

---

4. The recent opinion of this Court in Builders Corporation of America v. United States, 259 F.2d 766, 771, is distinguishable. There it was held that the substantive law connected with certain federal statutes was so undefined that the facts stated in the complaint might well give rise to a cause of action. But in the case at bar the expression of the court in that case, to the effect that "a motion to dismiss can still be sustained where the pleader is compelled by the facts to base the complaint upon an unmistakable theory of action," is entirely pertinent.

5. See also Schuh Trading Co. v. Commissioner, 7 Cir., 95 F.2d 404, 411.

6. "When an agreement has been thus reduced [to writing] the contractor has

the right to rely strictly upon the written word. Before evidence of its meaning can be received it must first be determined by the court to be so ambiguous or uncertain that its meaning cannot be divined from its own language. The intention must 'be ascertained from the writing alone, if possible.' Civil Code, sec. 1639." Sass v. Hank, 108 Cal.App. 2d 207, 211, 238 P.2d 652, 655.

"* * * it is also admissible in certain cases, for the purpose of annexing incidents to the contract in matters upon which the contract is silent, but it is never admitted to make a contract or to add a new element to the terms of a contract previously made by the parties." The Delaware, 14 Wall. 579, 81 U.S. 579, 602–603, 20 L.Ed. 779.

explain the language used was admissible.[7] Whether used in their ordinary or popular sense or according to their strict legal meaning, the import of these words is exactly the same.

■ This Court does not hold that there is any covenant against assignment. We simply construe the writing to offer rights solely to Shaw. No tender by Shaw of any permanent real estate loans was alleged. Appellants did not purport to act as nominees of Shaw. Appellants do not sue in the name of Shaw or on his behalf, but in their own right as assignees and as owners. But the writing makes it clear that appellants as such have no rights thereunder. Shaw was an indispensable party to suit even if it be assumed the writing was a contract. A complaint which does not name Shaw as a plaintiff states no cause of action or claim upon the written documents.

■ Finally, it is claimed that Home has waived any right to insist that Shaw be a party to any litigation upon the supposed obligation because of the dealing of Home with appellants. In the first place, the answer to this contention is plain, if there were no contract. A contract cannot be created by waiver. A contract cannot be created by estoppel. If it be assumed there was originally a contract enforceable against Home, we have already determined that Shaw was the promisee whether the contract was bilateral or unilateral. Shaw or his nominee was to do an act, or Shaw had promised he or his nominee would do an act. Neither by waiver nor estoppel could the promisee be varied. This could only have been done by a modification of the contract or a change of the offer. If Shaw or his nominee had performed then the benefit of the contract could

have been transferred. Otherwise, there is no question of assignment or covenant against assignment involved.

■ No allegations of fact are made which would support a claim of waiver or estoppel, and the specific facts in the complaint and the written documents themselves negative such contentions.[8]

Affirmed.

---

7. Cox v. Miller, 15 Cal.App.2d 494, 498, 59 P.2d 628; Ohio Electric Car Co. v. Le Sage, 182 Cal. 450, 455, 188 P. 982.

8. " * * * in deciding a motion to dismiss the complaint the court assumes the existence of facts well pleaded, * * * mere conclusions of the pleader are not

accepted as true." Sexton v. Barry, 6 Cir., 233 F.2d 220, 223.

" * * * only material facts and not the unsupported conclusions of the pleader are considered in the light most favorable to the plaintiff." Dunn v. Gazzola, 1 Cir., 216 F.2d 709, 711.